IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ANZ ADVANCED TECHNOLOGIES, LLC
d/b/a ANZ USA, LLC, et al.,

       Plaintiffs,

v.                                   CIVIL ACTION NO. 09-00228-KD-N

BUSH HOG, LLC, et al.,

       Defendant.

REPORT AND RECOMMENDATION

This matter is before the Court on the following:  defendants' Bush Hog, LLC ("Bush Hog") and Henry Crown and Company ("HCC") motion for a more definite statement and/or to dismiss and brief in support (docs. 34-35); plaintiffs' response in opposition (doc. 39); defendants' reply (doc. 48) and plaintiffs' motion to file sur-reply (doc. 55).  This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B).  Upon consideration of defendants' motion, plaintiffs' response in opposition thereto,  defendants' reply and all other pertinent portions of the record, it is recommended that defendants' motion be GRANTED <u>in part</u> and DENIED, <u>in part.</u>

I.      <u>More Definite Statement</u>[1]

---

[1]  Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim" that shows that the pleader is entitled to relief. Fed.R.Civ.P. 8(a)(2). Federal Rule of Civil Procedure 10(b) requires that the allegations of a claim "shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances ... [and][e]ach claim found upon a separate

Defendants argue that this Court should require Plaintiffs to provide a more definite statement on the following grounds:

> (a)    Because [the Second Amended Complaint] is a "shotgun" complaint, in which multiple counts incorporate by reference the same underlying allegations, the Plaintiffs should be required to separate out which allegations are germane to which counts;
>
> (b)    The pleading does not identify the terms of the so-called "Strategic Alliance Accord" or allege whether it is written or oral;
>
> (c)    The pleading alleges breach of certain "termination provisions", without specifying what such "termination provisions" were, when they were entered into, or whether they were written or oral; [and]
>
> (d)    Plaintiffs have referenced an Exhibit 8 to their Second Amended Complaint, which appears to include unintended ancillary documents.

(Doc. 34).  With respect to Defendants' contention that Plaintiffs' Second Amended Complaint remains a product of "shotgun" pleading, Defendants specifically argue that "[e]ach of the fourteen counts in the Complaint is purportedly supported by the same forty-six factual allegations, repeated and restated in each count" while simultaneously contending that "[t]he Complaint is also defective in that it lacks details necessary for formulation of a responsive pleading."  (Doc. 35 at 4 and 6).

Despite Defendants' protestations to the contrary , Plaintiffs' Second Amended Complaint is **<u>not</u>** a "shotgun" complaint defying efforts to formulate a reasonable response.  Plaintiffs have adequately set forth each "discrete claim" in a "separate count"

---

transaction or occurrence ... shall be stated in a separate count." Fed.R.Civ.P. 10(b).

as required by Rule 10(b).  There is no question which plaintiff is bringing which claim against which defendant.  Nor can it be said that any one of the factual allegations is irrelevant to any of Plaintiffs' specific claims.  Consequently, the following cases do not support Defendants' motion: Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001)(no distinction among the fourteen defendants charged in each count and, to the extent any factual allegations were material to a given count, such allegations "buried beneath innumerable pages of rambling irrelevancies."), and Cesnik v. Edgewood Baptist Church, 88 F.3d 902, 905 (11th Cir. 1996)(multiple theories of recovery contained in many of the counts of the complaint).  Likewise, Corbitt v. Home Depot U.S.A., Inc, 573 F.3d 1223 (11th Cir. 2009) is also distinguishable to the extent the Eleventh Circuit held that "pleading multiple assaults and batteries as one claim violates Federal Rules of civil Procedure 10(b)'s clear command that, 'each claim founded on a separate transaction or occurrence . . . must be stated in a separate claim or defense'." Id. at 1253.  Nor does the Second Amended Complaint in this case violate the precepts of Davis v. Coca-Cola Bottling Co., 516 F.3d 955, 979-84 (11th Cir. 2008)(discussing, *inter alia*, the impermissibility of violating Rule 10(b) by bunching together in one count untold causes of action with no distinction as to whether it is applicable to any one of the eight named plaintiffs or the unnamed members of their class).

    In addition, as was true in Garrett v. Stanton, 2008 WL 4701215, * 7 n.15 (S.D. Ala. Oct. 28, 2008), the reader of the Second Amended Complaint in this case, with two exceptions which will be discussed later, "is not left guessing from the Complaint as to

how plaintiff[s] w[ere] wronged, what defendants are alleged to have done, how plaintiffs contend that defendants are liable for those acts and omissions, or how the factual allegations are possibly material to the particular causes of action asserted."   Thus, as was also true in <u>Garrett</u>, the  Second Amended Complaint in this case "does not become a shotgun pleading merely because multiple claims rely upon the same underlying factual allegation or because the Complaint is not pleaded with maximum particularity." *Id*.  The discovery process will enable Bush Hog and HCC to "ferret out additional detail concerning plaintiffs' legal theories in a timely and efficient manner...." *Id*. *See also* <u>Abrams v. CIBA Specialty Chemicals Corp.</u>, 2008 WL 4183344, *4 (S.D. Ala. Sept. 10, 2008)("If defendants wish to delve into the nuances of the facts supporting each particular plaintiff's claims, then the discovery process (not the Rule 12(e) mechanism) is the appropriate vehicle for doing so.").

Rule 12(e) permits a party to move for a more definite statement of a pleading "which is so vague or ambiguous that the party cannot reasonably prepare a response." However, "[a] motion for a more definite statement is not a substitute for discovery." <u>Betancourt v. Marine Cargo Mgmt., Inc.</u>, 930 F.Supp. 606, 608 (S.D. Fla. 1996) (citing <u>Campbell v. Miller</u>, 836 F.Supp. 827, 832 (M.D.Fla.1993)).  With the exception of Counts Six and Seven[2], the undersigned concludes that the Second Amended Complaint

---

[2]  As to Counts Six and Seven, the undersigned recommends that these counts be dismissed <u>without</u> prejudice and the plaintiffs be permitted, if they desire, an opportunity to file a Third Amended Complaint addressing the pleading deficiencies identified below concerning the alleged breach of the Strategic Alliance Accord.

is not "so vague or ambiguous" that Defendants "cannot reasonably prepare a response." Consequently, it is recommended that Defendants' motion for a more definite statement be denied.

II.     Sufficiency of the Pleadings.

        1.     Standard of Review

        Prior to Bell Atlantic v. Twombly, 550 U.S. 544 (2007), a court could only dismiss a complaint "if it is was clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," language set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  This language as it relates to the Rule 12(b)(6) standard was expressly rejected in Twombly wherein the Supreme Court set forth the following standard regarding a court's determination of the sufficiency of pleading such as is in issue in this case:

> Federal Rule of Civil Procedure 8(a)(2) requires only " a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [citation omitted] a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do [citation omitted]. Factual allegations must be enough to raise a right to relief above the speculative level.

550 U.S. at 555.  The Supreme Court emphasized, however, that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  550 U.S. at 570.  The Supreme Court recently reinforced the

5

Twombly standard in Ashcroft v. Iqbal, – U.S. – , 129 S.Ct. 1937, 1949-50 (2009).  The

Court reiterated that a claim is insufficiently pled if it offers only "'labels and

conclusions'" or "'a formulaic recitation of the elements of a cause of action'."  Iqbal,

129 S.Ct. at 1949, *quoting* Twombly, 550 U.S. at 557.  The Iqbal Court explained:

> Two working principles underlie our decision in Twombly. First, the tenet
> that a court must accept as true all of the allegations contained in a
> complaint is inapplicable to legal conclusions. Threadbare recitals of the
> elements of a cause of action, supported by mere conclusory statements, do
> not suffice. . . . Rule 8 marks a notable and generous departure from the
> hyper-technical, code-pleading regime of a prior era, but it does not unlock
> the doors of discovery for a plaintiff armed with nothing more than
> conclusions. Second, only a complaint that states a plausible claim for relief
> survives a motion to dismiss. Determining whether a complaint states a
> plausible claim for relief will, as the Court of Appeals observed, be a
> context-specific task that requires the reviewing court to draw on its judicial
> experience and common sense. But where the well-pleaded facts do not
> permit the court to infer more than the mere possibility of misconduct, the
> complaint has alleged-but it has not "show[n]"-"that the pleader is entitled
> to relief."

Iqbal, 129 S.Ct. at 1949-50 (citation and internal punctuation omitted).  *See also*, Phillips

v. County of Allegheny, 515 F.3d 224, 233 (3rd Cir. 2008)("After Twombly, it is no

longer sufficient to allege mere elements of a cause of action; instead 'a complaint must

allege facts suggestive of [the proscribed] conduct'."), *quoting* Twombly, 550 U.S. at

553, n. 8.  *See also*, Sinaltrainal v. Coca-Cola Co., 2009 WL 2431463 (11th Cir. Aug. 11,

2009)("The mere possibility the defendant acted unlawfully is insufficient to survive a

motion to dismiss [*citing* Iqbal, 129 S.Ct. at 1949] [and] [t]he well-pled allegations must

nudge the claim 'across the line from conceivable to plausible'" [*quoting* Twombly, 550

U.S. at 570]").

It is also important to note that "[a] complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits."  <u>McTernan v. City of York, Pennsylvania</u>, 564 F.3d 636, 646 (3rd Cir. 2009), *quoting*, <u>Phillips</u>, 515 F.3d at 231, in turn *quoting*, <u>Twombly</u>, 550 U.S. at 553, n. 8.  The Supreme Court's <u>Twombly</u> formulation of the pleading standard "'does not impose a probability requirement at the pleading stage,'" but instead "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' of the necessary element."  *Id.*, *quoting* <u>Phillips</u>, 515 F.3d at 234, in turn *quoting*, <u>Twombly</u>, 550 U.S. at 556.  *See also*, <u>Mitchell v. Farcass</u>, 112 F.3d 1483, 1490 (11th Cir. 1997)(noting that the language of § 1915(e)(2)(B)(ii) tracks the language of Fed.R.Civ.P. 12(b)(6)).

2.    <u>Defendants' Allegations</u>[3]

Defendants argue that the Second Amended Complaint should be dismissed for the following reasons:

(a)    Counts Four and Five purport to state claims based on alleged wrongful termination of the UTV Supply Agreement, which contradicts the unambiguous terms of such agreement, permitting non-cause termination on 180 days notice by either party;

(b)    Count Six purports to state a claim for breach of the "Strategic Alliance Accord" but does not specify the terms of the accord or the manner in which it was breached;

(c)    Plaintiffs' claim that Defendants breached a number of ancillary agreements contained in Count Seven fails because

---

[3]  The Court addresses Defendants' arguments in the order presented in the brief in support of the motion.

7

Plaintiffs have not alleged the terms of those ancillary agreements, nor the manner in which they were breached;

(d)     The Plaintiffs' fraud and suppression claims in Counts Seven and Eight do not satisfy the particularity requirement of F.R.C.P. 9(b), and are based upon alleged "misrepresentations" which are general statements of promised future performance, and are not actionable;

(e)     Plaintiffs' veil-piercing claim is unsupported by specific allegations to support such relief;

(f)     Plaintiffs' civil conspiracy and vicarious liability/*respondeat superior* claims in Counts Eleven and Twelve are unsupported by any underlying tort;

(g)     Plaintiffs' *quantum meruit* and unjust enrichment claims cannot stand because there exists an express contract between the parties covering the same subject matter; and

(h)     Counts One, Two and Three are incorrectly characterized as claims for "account stated" and as such cannot be sustained.

(Doc. 34).  It is Defendants' general contention that, once the Court removes what Defendants characterize as mere "legal conclusions" and "formulaic recitation of elements," the Second Amended Complaint will not allege facts sufficient to state a plausible claim for relief.  *Id*.  Notwithstanding Defendants' contention, the Court is bound to follow the well established principle that the complaint must be viewed in the light most favorable to the plaintiff.  Garrett v. Stanton, 2008 WL 4701215, * 2 (S.D. Ala. Oct. 28, 2008), *citing* Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); The Mitchell Company, Inc. v. Campus, 2008 WL 183344, * 3 (S.D. Ala. Jan. 16, 2008).  With this legal framework in mind the Court now turns to the merits of defendants' arguments.

3.      Analysis.

(a)     Breach of Contract Claims - Counts Four and Five

        The fact that defendants may have a plausible defense to plaintiffs' two

alternative breach of contract claims does not render those claims implausible.[4]  Plaintiffs

have alleged facts upon which it could be found that the "no-cause termination" provision

relied upon by the defendants was waived by the defendants both by agreement and by

conduct.  *See*, Doc. 29 at ¶¶ 33-41.  The Alabama Supreme Court has "consistently held

that nonwaiver clauses and clauses that require modifications to be in writing can be

found to be waived upon proper proof."  Retail Developers of Alabama, LLC v. East

Gadsden Golf Club, Inc., 985 So.2d 924, 930 n.3 (Ala. 2007).  *See also* Walker v.

Biogistics, Inc., 2009 WL 856998, * 2 (S.D. Ala. Mar. 24, 2009)("Alabama law provides

that a written agreement may be modified by a subsequent oral agreement of the parties,

'even where the contract contains a requirement that all modifications be in writing'."),

*quoting* Ex parte Coleman, 861 So.2d 1080, 1084 (Ala. 2003).  Consequently, the

integration clause relied upon by the defendants cannot, as a matter of law, prevent

waiver, modification or other agreement.  Plaintiffs are also correct in their contention

that, inasmuch as Alabama law permits proof of both oral and written modifications of a

contract, neither the parol evidence rule nor the integration clause at issue in this litigation

---

[4]One of Defendants' plausible defenses may well by the contention that Counts Four and
Five are barred by the Statute of Frauds, as argued for the first time in Defendants' reply.  Reply
(Doc. 48) at 4-6.  However, such a defense does not render Plaintiffs' claims implausible nor
authorize this Court to ignore the material issues of fact which have yet to be addressed with any
discovery by either side.

can act as a bar to plaintiffs' contract claims. *Id.* To dismiss plaintiffs' breach of contract claims at this juncture, this Court would be required to make several factual determinations, including but not limited to a finding that no waiver, modification or elimination of the termination clause relied on by the defendants had occurred, which is clearly impermissible. It is recommended that Defendants' motion to dismiss Counts Four and Five be denied.

  (b) <u>Breach of the Strategic Accord Agreement - Count Six</u>

   In this count of the Second Amended Complaint, Plaintiffs assert against Bush Hog only that "Defendant breached the Strategic Alliance Accord entered into with the Plaintiff" (¶ 67) and "[a]s a proximate consequence of the Defendant's breach, Plaintiff was damaged as set forth hereinabove" (¶ 68). For this alleged breach, "Plaintiff demands judgment against Bush Hog for compensatory, consequential, and incidental damages . . ." (Doc. 29 at p. 25). Plaintiffs concede that the only factual allegations in the Second Amended Complaint on which they rely for their contention that they have stated a claim for breach of the Strategic Alliance Agreement for which relief can be granted are the allegations regarding "(1) the terms - i.e., ANZ would engineer, design, market, manufacture, and sell various Bush Hog parts and products which Bush Hog would purchase or let ANZ sell to others; and (2) when the accord was entered into (November 1, 2006), in addition to the allegation that "[i]n fulfilling its obligations under the agreement, ANZ invested over $7,000,000." Opposition Brief (Doc. 39 at 24), citing the Second Amended Complaint. (Doc. 29 at ¶¶ 23-26) Plaintiffs then argue that these

10

facts are sufficient because:

> Alabama Code (1975) § 7-2-204 states: '(1) A contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract; (2) an agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined; (3) even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy.'

Opposition Brief (Doc. 39 at 24).  The Court disagrees.

According to the Second Amended Complaint, the Strategic Alliance Agreement was first proposed in an e-mail from Joe Kolb of HCC to ANZ International dated October 3, 2006 as follows:

> In order to accomplish all the objectives [namely HCC's desire "to have a long term, strategic relationship with ANZ] we are recommending splitting the document into two agreements.  The first would be a **Supply Agreement** which focuses on the practical terms and conditions specific for the production of the current UTV design.  The second would be a broad **Strategic Alliance Agreement** that outlines the overall relationship between the two companies and acts as an umbrella for any/all components and/or product Supply Agreements.  An additional benefit of this arrangement would be that future projects could be easily added to the overall Strategic Alliance Agreement.

Second Amended Complaint (Doc. 29 at ¶ 21) (emphasis in original).   It is possible to argue, based on the terms of this e-mail, that the "Strategic Alliance Agreement" was merely to represent an overall mission statement about the two companies' relationship under which the actual contracts entered into by the companies for various products

would be placed and/or added.  The first of these contracts was the UTV Supply

Agreement.

In the next paragraph of their Amended Complaint, plaintiffs allege that a

"Strategic Alliance Accord" was entered into by Bush Hog with ANZ on November 1,

2006, but, in lieu of presenting any specific terms, merely discuss the purpose of the

"Accord" which was for "Bush Hog to engage ANZ International's services for the

engineering design, tooling design, product development, product testing and evaluation,

machine set-up, and manufacture of parts and products."  (Second Amended Complaint

at ¶ 22).  Plaintiffs' very next factual allegation contains the following description of "[a]

Letter of Understanding and Statement of Accord executed by Bush Hog and ANZ":

> It being understood and agreed that a Strategic Alliance relationship
> does exist between ANZ International and Bush Hog, LLC.  The
> premise of this long-term Alliance is to provide a foundation upon
> which the two parties will engage in a variety of mutually
> advantageous projects, related to and supportive of Bush Hog's core
> business and market direction, and achieved through the utilization
> of ANZ's technical engineering skills and more economical
> manufacturing expertise.  The Utility Vehicle Supply Agreement
> embodies one of the three Strategic Alliance projects.
>
> * * * *
>
> Therefore, it is agreed that
>
> * * * *
>
> ● Bush Hog will purchase Configuration Number II Product
> at a minimum quarterly average rate of 250 units monthly, beginning
> as Bush Hog purchase orders issued in January 2008, the
> corresponding ANZ Shipment in March 2008, and continuing at such
> minimum rates throughout the Term of the Agreement.  Failure to

purchase at this minimum rate will void the Exclusive Supply
Relationship stipulated in Paragraph 3.4 of the Supply Agreement.

*Id*. at ¶ 23.  The Alliance/Accord between Bush Hog and ANZ consists merely of a description of their relationship and intent to continue working with one another.  It is not, itself, a contract to do anything specific but merely "a foundation upon which the two parties **will engage** in a variety of mutually advantageous projects" in the future.  *Id*. (emphasis added).  The only terms requiring any specific performance by either Bush Hog or ANZ are contained in the section of the aforementioned letter which describes the "Utility Vehicle Supply Agreement," one of the contracts intended to fall under the umbrella of the parties' Alliance/Accord.

In the next paragraph of their Amended Complaint, plaintiffs allege that "[p]rior to entering into this Strategic Accord and the initial Utility Vehicle Supply Agreement of 2006, ANZ International made Bush Hog aware that to perform the contemplated Utility Vehicle Supply Agreement and the Strategic Accord would necessitate ANZ expending over $7,000,000 for the purchase of land and the construction of additional production facilities, and ANZ would require long-term agreements with Bush Hog in order to recoup such costs."  (Second Amended Complaint  at ¶ 24).   The only "long-term" representation thereafter discussed by the plaintiffs involves only promises with respect to the Utility Vehicle Supply Agreement.  *Id*. at ¶¶ 29-31 and 35-36.   Because plaintiffs have failed to make any distinction between either the specific obligations required to be performed under these two allegedly separate agreements or the $7,000,000 in costs

13

plaintiffs contend were incurred, there exists no basis for this Court to fashion a remedy

for any alleged breach of the Strategic Alliance Agreement.[5]   Consequently, Plaintiffs'

reliance on  § 7-2-204 of the Alabama Code is unavailing.  In addition, despite Plaintiffs'

contention to the contrary, <u>White Sands Group, L.L.C. v. PRS II, LLC</u>, 998 So. 2d 1042,

1051 (Ala. 2008), is essentially indistinguishable. The Alabama Supreme Court held that:

> "Even though a manifestation of intention is intended to be
> understood as an offer, it cannot be accepted so as to form a contract
> unless the terms of the contract are reasonably certain." [Citation
> omitted].  "The terms of a contract are reasonably certain if they
> provide a basis for *determining the existence of a breach and for
> giving an appropriate remedy.*"

998 So.2d at 1051 (emphasis in original).  The <u>White Sands</u> court also reiterated the well

established principal that "[a] reservation to either party to a contract of an unlimited right

---

[5]The closest plaintiffs come to describing any specific obligations under the
"Alliance/Accord" between the parties which could be distinguished from their obligations under
the Utility Vehicle Supply Agreement is set forth in paragraph 26 as follows:

> (6) that **if** ANZ would design, develop, and manufacture the economy
> UTV and the compact UTV, as well as a trans-axle, it would pay for such
> work and purchase such products; (7) that **if** ANZ International would
> verify the RZ172, prototype, and produce the RZ160, and plan for the
> production of RZ172 and produce a timing plan for the RZ148, Bush Hog
> would pay for such work and purchase such products; . . . (9) Bush Hog,
> LLC, guaranteed reimbursement of all verifiable expenses incurred by
> ANZ International for development of both the utility vehicle and the
> transaxle product, **if** the products were not approved by HCC on or before
> March 1, 2008.

Second Amended Complaint at ¶ 26 (emphasis added).  According to the Plaintiffs, however,
these were mere misrepresentations made by Bush Hog to ANZ International "both before and
after the Strategic Accord and the utility Vehicle Supply Agreement were entered into" and are
not described as specific terms of the Alliance/Accord upon which a breach of contract claim
could rest.

to determine the nature and extent of his performance, renders his obligation too indefinite for legal enforcement." *Id.*, *quoting*, <u>Smith v. Chickmauga Ceder Co.</u>, 263 Ala. 245, 248-49, 82 So.2d 200, 202 (1955).  Although Plaintiffs argue that "[a]t no time in the Strategic Alliance Accord does ANZ reserve a 'future unbridled right to determine the nature of performance'," they fail to describe anything but such unbridled right.  For example, Plaintiffs clearly state that Bush Hog was only obligated to pay "**if** ANZ would design, develop, and manufacture the economy UTV and the compact UTV, as well as a trans-axle."  (Second Amended Complaint at ¶ 26) (emphasis added).

For the reasons stated in this section, the undersigned recommends that Defendants' motion to dismiss Count Six of the Second Amended Complaint be granted but should plaintiffs request an opportunity to set forth a more definite statement which will correct the deficiencies identified herein concerning the alleged Strategic Alliance Agreement, such opportunity be granted.[6]

(c)     <u>Breach of Ancillary Agreements – Count Seven</u>.

For the reasons set forth with regard to Count Six, the undersigned recommends that Defendants' motion to dismiss Count Seven of the Second Amended Complaint also be granted but should plaintiffs request an opportunity to set forth a more definite

---

[6]"In general, the federal rules favor allowing amendments." <u>Trico Marine Assets, Inc. v. Bender Shipbuilding & Repair Co., Inc.</u>, 2009 WL 1383306, * 1 (S.D. Ala. May 15, 2009), *citing* <u>Dussouy v. Gulf Coast Investment Co.</u>, 660 F.2d 594, 597 (5th Cir.1981) ("The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading."); Fed.R.Civ.P. Rule 15(a)(2) (the "court should freely give leave when justice so requires.").

statement which will correct the deficiencies identified herein concerning the alleged

Strategic Alliance Agreement, such opportunity be granted.

      (d)    <u>Fraud and Suppression Claims - Counts Eight and Nine</u>.

Defendants argue that these counts should be dismissed because Plaintiffs have

failed to delineate which specific statement was made by which specific individual, all of

whom are agents of the defendants, and because the alleged statements were simply

general statements of future expectations and not actionable misrepresentations of

existing fact.  A claim for promissory fraud under Alabama law is "based on a promise to

act or not act in the future."  <u>Trico Marine Assets, Inc. v. Bender Shipbuilding & Repair

Co., Inc.</u>, 2009 WL 1383306, * 3 (S.D. Ala. May 15, 2009), *citing* <u>Ex Parte Michelin</u>, 795

So.2d 674, 678 (Ala.2001).  The Alabama Supreme Court explained, in <u>S.B. v. Saint

James School</u>, 959 So.2d 72, 101, (Ala.2006),  that claims of promissory fraud require

proof of the elements of fraud, specifically "(1) a false representation (2) of a material

existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a

proximate consequence of the misrepresentation" and that "two additional elements must

be satisfied: (5) proof that at the time of the misrepresentation, the defendant had the

intention not to perform the act promised, and (6) proof that the defendant had an intent to

deceive." 959 So.2d at 101 (citations omitted).  In addition, "[w]hile the mere failure to

perform the promised act is not by itself sufficient evidence of fraudulent intent, for

purposes of a promissory-fraud claim, the factfinder may consider that failure, together

with other circumstances, in determining whether, at the time the promise was made, the

promisor intended to deceive." *Id. quoting* <u>Byrd v. Lamar</u>, 846 So.2d 334, 343 (Ala.2002) (internal quotations and citation omitted).

As applied to the case at bar, the undersigned finds that Plaintiffs have sufficiently pled their fraud and suppression claims to preclude dismissal at this juncture. Although the alleged statements were insufficient to establish the existence of a contract necessary to support two of plaintiffs' breach of contract claims, they are not insufficient with respect to plaintiffs' fraud and suppression claims. As stated previously, "[a] complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." <u>McTernan v. City of York, Pennsylvania</u>, 564 F.3d 636, 646 (3rd Cir. 2009), *quoting*, <u>Phillips</u>, 515 F.3d at 231, in turn *quoting*, <u>Twombly</u>, 550 U.S. at 553, n. 8. The Supreme Court's <u>Twombly</u> formulation of the pleading standard "'does not impose a probability requirement at the pleading stage,'" but instead "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' of the necessary element." *Id.*, *quoting* <u>Phillips</u>, 515 F.3d at 234, in turn *quoting*, <u>Twombly</u>, 550 U.S. at 556. *See also,* <u>Trico</u>, *supra*, 2009 WL 1383306 at * 4 ("Discovery may 'disclose more precisely the basis of both claim and defense' and 'define more narrowly the disputed facts and issues'."), *quoting* <u>Conley v. Gibson</u>, 355 U.S. 41, 48 (1957)(subsequently overturned on other grounds).

The fact that defendants may have a plausible defense to plaintiffs' fraud and suppression claims does not render those claims implausible. Consequently, it is recommended that Defendant's motion to dismiss Counts Eight and Nine be denied.

(e)      Piercing the Corporate Veil - Count Ten.

Defendants also challenge as insufficient Plaintiffs' allegations that "HCC and

Bush Hog are alter egos of the same entity [and] HCC has complete control of the

finances and decisions of Bush Hog, LLC." Second Amended Complaint at ¶ 84.

However, The Alabama Supreme Court has held:

> "[A] separate legal existence will not be recognized when a
> corporation is 'so organized and controlled and its business
> conducted in such a manner as to make it merely an instrumentality
> of another.' Forest Hill Corp. v. Latter & Blum, 249 Ala. 23, 28, 29
> So.2d 298, 302 (1947), or when it is the 'alter ego' of the person[
> FN3] owning and controlling it. Whether the separate legal entity of
> a corporation may be 'pierced' and personal liability imposed is ' a
> question of fact treated as an evidentiary matter to be determined on
> a case by case basis.' Messick v. Moring, 514 So.2d 892, 893
> (Ala.1987); accord  Deupree v. Ruffino, 505 So.2d 1218
> (Ala.1987)."

Environmental Waste Control, Inc. v. Browning-Ferris Industries, Inc., 711 So.2d 912,

914 (Ala. 1997).  See also, Ford v. Carylon Corp., Inc., 937 So.2d 491, 498 (Ala.

2006)("A parent corporation generally cannot be held liable for the acts of its subsidiary

unless the latter's corporate veil can be pierced as a result of the parent's abuse of

control.").  As applied to the instant case, particularly in light of the various factual

allegations in the Second Amended Complaint concerning the written and oral

communications made interchangeably by agents of both HCC and Bush Hog, Plaintiffs'

claim that each of these entities may be held liable for the acts of the other is plausible on

its face.  See e.g., Second Amended Complaint at ¶¶ 3, 7-8, 17, 20-21, 27, 75 and 84.

Under Alabama law, a question of fact exists here which is to be treated as an evidentiary

matter and thus more appropriately addressed on a motion for summary judgment at the conclusion of discovery.  Environmental Waste, 711 So.2d at 914; Perry v. Household Retail Services, Inc., 953 F.Supp. 1378, 1382 (M.D. Ala. 1996) (the determination of whether the corporate veil should be pierced is an issue for the trier of fact where the trier of fact can make credibility choices and weight the evidence); In re Silicone Gel Breast Implants Products, 837 F.Supp 1128, 1133 (N.D. Ala. 1993)(questioning whether corporate veil-piercing is an issue that could ever be appropriate for summary judgment because of the fact-intensive nature of the analysis which should be resolved at trial where the trier of fact can makes necessary credibility choices and weight the evidence). See also Abrams v. CIBA Specialty Chemicals Corp., 2008 WL 4183344, * 3 (S.D. Ala. Sept. 10, 2008)("the threshold of sufficiency to which a complaint is held at the motion-to-dismiss stage is exceedingly low . . . [and] . . .[a]ll that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests'."), quoting United States v. Baxter Int'l, Inc., 345 F.3d 866, 881 (11th Cir.2003), and Evans v. McClain of Georgia, Inc., 131 F.3d 957, 964 n. 2 (11th Cir.1997).

Applying Iqbal, the Court concludes that Plaintiffs have stated a plausible claim and are entitled to explore it further through discovery.[7]  It is therefore recommended that

---

[7]Defendants' understanding regarding the elements which Plaintiffs must prove to prevail on their veil-piercing claim is evident in their reply brief.  Reply (Doc. 48) at 13.  Defendants have thus demonstrated that the claim set forth in Count Ten is not so vague as to be impossible to answer.  Defendants do not, and cannot, assert that Plaintiffs have no right to conduct discovery on the issue.  See e.g., Jackam, 800 F.2d at 1580 (held that plaintiffs were entitled to explore through discovery).

Defendants' motion to dismiss Count Ten be denied.

(f)    Civil Conspiracy and Vicarious Liability/*Respondeat Superior* Claims - Counts Eleven and Twelve

Defendants next challenge the sufficiency of Plaintiffs' civil conspiracy claim in Count Eleven on the ground that Plaintiffs "cannot establish any underlying tort upon which the conspiracy could be based" because of Plaintiffs' inadequate pleading of their fraud claim.[8]  Similarly, Defendants contend that Plaintiffs' vicarious liability/*respondeat superior* claim in Count Twelve is due to be dismissed because the only "tortious actions" of Defendants' agents or employees alleged in the Complaint, namely the claims for fraud and suppression, are "woefully inadequate and lacking in particularity."   However, as stated above, Plaintiffs have stated a plausible and a sufficient claim for both fraud and suppression.  Consequently, Defendants' contention that Counts Eleven and Twelve are due to be dismissed is without merit.  Accordingly, it is recommended that Defendants' motion to dismiss Counts Eleven and Twelve be denied.

(g)    Unjust Enrichment and Quantum Meruit Claims - Counts Thirteen and Fourteen.

Defendants argue that Plaintiffs cannot assert either a claim for unjust enrichment

---

[8]Defendants argue for the first time in their reply brief that, inasmuch as Count Eleven does not state that it is in the alternative to Count Ten's Claim for piercing the corporate veil and incorporates the contention that Bush Hog is the alter ego of HCC, the conspiracy claim must fail because a party cannot conspire with itself.  Reply (Doc. 48) at 2.  It is, however, clear that Count Eleven is asserted in the alternative to Count Ten.  "Alternative pleading is permitted, just as is inconsistent pleading."  Johnson v. Wheeler, 492 F.Supp.2d 492, 513 (D. Md. 2007), *citing* Fed.R.Civ.P. 8(e)(2); Henry v. Daytop Village, Inc., 42 F.3d 89, 95 (2nd Cir. 1994)("Under Rule 8(e)(2) . . ., a plaintiff may plead two or more statements of a claim within the same count, regardless of consistency.")

or for quantum meruit because such claims do not lie in the face of an express contract.

Plaintiffs essentially acknowledge that their claims founded on an express contract would

not support a claim for equitable relief such as their claim for unjust enrichment or

quantum meruit.  Opposition Brief (Doc. 39) at 35, *citing* Carroll v. LJC Defense

Contracting, Inc., — So.2d — , 2009 WL 1353266, * 10 (Ala. Civ. App. May 15, 2009).

Plaintiffs thus concede that "[w]hen an express contract exists, an argument based on

quantum meruit recovery in regard to an implied contract fails."  *Id*., *quoting* Brannan &

Guy, P.C. v. City of Montgomery, 828 So.2d 914, 921 (Ala. 2002).  Plaintiffs argue,

however, that they assert these claims in the alternative in the event Defendants prevail on

their contention that the termination provisions agreed to by Bush Hog after Bush Hog

exercised its alleged option under the "Non-Cause Termination" provision of the 2007

UTV Supply Agreement did not constitute an express contract which would bar

Plaintiffs' claims to equitable relief.  "A claim of quantum meruit, or quasi-contract, is a

request for equitable relief based on the principle  'that if one knowingly accepts services

rendered by another, and the benefit and result thereof, the law implies a promise on the

part of the one who so accepts with knowledge, to pay the reasonable value of such

services rendered'."  Carroll,  2009 WL 1353266, * 10, *quoting* Frank Crain Auctioneers,

Inc. v. Delchamps, 797 So.2d 470, 474 (Ala. Civ. App.2000) (quoting Richards v.

Williams, 231 Ala. 450, 453, 165 So. 820, 823 (1936)).  Plaintiffs are entitled to an

opportunity to prove that they performed services for Bush Hog pursuant to promises

made by Bush Hog after it exercised its alleged option under the "Non-Cause

Termination" provision of the 2007 UTV Supply Agreement and the value of those services.  *Id*.

With specific respect to the unjust enrichment claim, Defendants argue that Plaintiffs have failed to allege that "defendant holds money which was improperly paid to defendant because of mistake or fraud."  Defendants' Brief (Doc. 35 at 25), *quoting* Mangily v. Mangily, 951 So.2d 638, 654 (Ala. 2006).  *See also*, Dickinson v. Cosmos Broadcasting Co., Inc., 782 So.2d 260, 266 (Ala. 2000) *quoting* Hancock-Haslet Gen. Constr. Co. v. Trade Co., 499 So.2d 1385, 1387 (Ala. 1986)("The essence of the theories of unjust enrichment or money had and received is that a plaintiff can prove facts showing that defendant holds money which, in equity and good conscience, belongs to plaintiff or holds money which was improperly paid to defendant because of mistake or fraud.").  Plaintiffs have, however, alleged that "Defendants have been unjustly enriched by accepting parts and shipments of goods other than the TH4400 and 4200 and failing to pay for the same as well as receiving tax exemptions and export credits from the Republic of India."  Opposition Brief (Doc. 39) at 36.  This allegation is not specifically challenged in Defendants' reply brief. (Doc. 48 at 14-15).  Consequently, there exists material questions of fact concerning, *inter alia*, the sums received by Bush Hog by way of exemptions and export credits passed on by ANZ but for which ANZ will remain liable by virtue of the alleged fraud committed by the Defendants.  Plaintiffs are entitled to pursue their unjust enrichment claim at this juncture.

For these reasons, it is recommended that Defendants' motion to dismiss Counts

Thirteen and Fourteen be denied.

(h)    <u>Account Stated Claims - Counts One, Two and Three</u>.

Defendants initially argued that these Counts were due to be dismissed because "they do not in any fashion plead account-stated." Defendants' Brief (Doc. 35 at 25). According to the Defendants, "an account stated is a separate agreement, not founded on the original liability." *Id.* at 27, *citing* <u>Acers v. Cavalry S.P. I, LLC</u>, 876 So.2d 474, 477 (Ala. Civ. App. 2003). Alabama law specifically provides:

> "An account stated is a post-transaction agreement. It is not founded on the original liability, but is a new agreement between parties to an original account that the statement of the account with the balance struck is correct and that the debtor will pay that amount. It is as if a promissory note had been given for the balance due.

> "A prima facie case on an account stated is made when the plaintiff proves (1) a statement of the account between the parties is balanced and rendered to the debtor; (2) there is a meeting of the minds as to the correctness of the statement; and (3) the debtor admits liability. **The debtor's admission to the correctness of the statement and to his liability thereon can be** express or **implied. An account rendered, and not objected to within a reasonable time becomes an account stated, and failure to object will be regarded as an admission of correctness of the account**."

876 So.2d at 477, *quoting* <u>University of South Alabama v. Brace</u>, 466 So.2d 148, 150 (Ala. Civ. App. 1985)(emphasis added). Plaintiffs, in response to Defendants' argument, states that "none of the counts under this theory rely on the original UTV contract [but, instead, upon the fact that] Plaintiffs supplied parts and products outside the 'original liability'." Opposition Brief (Doc. 39 at 36-37). Defendants do not challenge this contention in their reply brief. Consequently, it cannot be said that the Plaintiffs have

improperly pled their account stated claims in Counts One through Three.  It is therefore recommended that Defendants' motion to dismiss Counts One through Three of the Second Amended Complaint be denied.

CONCLUSION

For the reasons stated above, it is recommended that Defendants' motion for a more definite statement be denied and that Defendants' alternative motion to dismiss the Second Amended Complaint be GRANTED as to Counts Six and Seven and DENIED as to all other counts.[9]

**Done** this 29th day of September, 2009.

 /s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[9] In light of this recommendation, Plaintiffs' motion for leave to file a sur-reply in opposition to defendants' motion to dismiss (doc. 55) is **DENIED** as **MOOT**.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL
RIGHTS AND RESPONSIBILITIES FOLLOWING
RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.      **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)©; Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

      **Done** this 29th day of September, 2009.

                                    /s/ Katherine P. Nelson
                                    UNITED STATES MAGISTRATE JUDGE