# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | |
|---|---|
| ANZ ADVANCED TECHNOLOGIES, LLC d/b/a ANZ USA, LLC, et al., | ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 09-00228-KD-N |
| | ) |
| BUSH HOG, LLC, et al., | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

This action came on for hearing before the undersigned Magistrate Judge on November 18, 2010 on the following matters concerning ANZ's compliance with the prior orders of this Court to produce "any hard drive or other data storage devices used by, and in the possession, custody, or control of, Irfan Sheriff and Rakesh Vashee" (the "Responsive Media"):

> 1) Bush Hog's notice (doc. 157) of plaintiff's noncompliance with the Court's last Order to produce dated September 9, 2010 (doc. 154);
>
> 2) ANZ's notice (doc. 155) which confirms that the Responsive Media has not been produced as required by the Court's Orders of both May 4, 2010 (doc. 113) and September 9, 2010 (doc. 154); and
>
> 3) ANZ's motion (doc. 156) for this Court to Request International Assistance Pursuant to the Hague Evidence Convention which it contends is required before it can comply with this Court's order.

A hearing was scheduled to hear oral arguments concerning ANZ's motion for International Assistance (doc. 156) and to afford ANZ the opportunity to show cause why the undersigned should not recommend that this action be dismissed as a sanction for the discovery abuses documented in this Court's orders of May 4, 2010 (doc. 113) and September 9, 2010 (doc. 154) and for ANZ's repeated failure to comply to with the Court

orders to produce the Responsive Media at issue. Following the hearing the undersigned issued an order (doc. 165) directing additional briefing on the limited issue of ANZ's contention, raised for the first time at the hearing conducted on November 18, 2010, that the wrongdoing of ANZ International should not be grounds to dismiss the claims of ANZ USA, a separate and distinct corporation and the court has considered the arguments presented in those responses (docs. 167, 168, 171, 173) as well. Upon consideration of the arguments of counsel at the hearing on November 18, 2010, the submissions of the parties and all other pertinent portions of this record, it is recommended that this action be dismissed with prejudice as the most appropriate sanction for ANZ's failure to comply with the orders of this Court and for its continued discovery abuses.

The following chronological summary of the parties' dealings which precipitated the present litigation and the course of the proceedings are necessary in order to appreciate the actual significance of ANZ's conduct.

I.    General Background: Parties' Relationship.

"In April 2007, [Irfan Sheriff], on behalf of ANZ International Manufacturing Pvt. Ltd., successor in interest to ANZ International, an India partnership ("ANZ"), was negotiating the terms of a UTV Supply Agreement with Bush Hog, LLC." Sheriff Aff. (Doc. 95-1) at ¶ 2. "The UTV Supply Agreement was executed on April 23, 2007." *Id*. "The UTV Supply Agreement contained a clause that permitted Bush Hog to cancel the agreement for no cause with 180 days' notice." *Id*. at ¶ 3. *See also*, Second Amended Complaint (Doc. 29) at ¶ 32, incorporated by reference into Third Amended Complaint

(Doc. 82) at 1. On July 18, 2008, Bush Hog sent ANZ a notice of termination pursuant to Section 13.1.2 of the 2007 Utility Vehicle Supply Agreement. *Id*. at ¶ 38.

ANZ filed its initial complaint in this action on April 24, 2009. (Doc. 1). From the outset, ANZ has maintained that Bush Hog did not have the right to terminate the contract before the expiration of five years, despite Section 13.1.2 of the Supply Agreement. Second Amended Complaint (Doc. 29) at ¶¶ 32-38. This contention is principally based upon an alleged letter dated September 5, 2007 from the CEO of Bush Hog to Canara Bank following the execution of the 2007 Utility Vehicle Supply Agreement the previous April. *Id*. at ¶¶ 35-36. Although Mr. Sheriff has asserted that he "had not seen the September 5, 2007 letter ['sent to Canara Bank by Bush Hog CEO Dennes Webster'] until received by ANZ counsel in March 2009," he has described this letter as a letter which "mirrored representations and contract language interpretations provided ANZ by Bush Hog before and after the execution of the April 23, 2007 UTV Supply Agreement."[1] Sheriff Affidavit (Doc. 95-1) at ¶¶ 14-15.

In its Counterclaim, Bush Hog contends that, pursuant to the UTV Supply Agreement, "ANZ International agreed to manufacture and sell incomplete and unassembled UTV's that conformed to certain specifications agreed to by Bush Hog and ANZ International." (Doc. 70 at ¶ 6) Bush Hog further contends that "the UTV's

---

[1] The record confirms that Rakesh Vashee had access to the alleged September 5, 2007 letter to Canera Bank before March 2009, inasmuch as Mr. Vashee quotes from that alleged letter in his alleged letter to Bush Hog dated August 27, 2008, which he describes as ANZ's "Non Acceptance of cancellation of Agreement dated April 23, 2008." Complaint (Doc. 1) at Exhibit 7 (Doc.1-10). Unless, of course, Mr. Vashee's letter bearing the date of August 27, 2008, was indeed fabricated in April of 2009 as alleged by Bush Hog's computer expert. *See* Doc.154 at n. 4.

delivered by ANZ International rarely conformed to contract specifications and consistently required Bush Hog to supply missing parts and/or remanufacture or assemble components that were ANZ International's responsibility." *Id*. at ¶ 7. As a result, Bush Hog contends that it "could not be competitive in the market" and, therefore, cancelled the UTV Supply Agreement pursuant to Section 13.1.2. *Id*. at ¶ 8. Bush Hog further asserts the following:

> In a meeting on July 29, 2008, ANZ and Bush Hog representatives met to negotiate the precise details of how to wind down the contract. At that meeting, ANZ International and Bush Hog signed an agreement acknowledging the termination and agreeing to a new schedule for the delivery of 1,776 UTVs to Bush Hog (the "UTV Termination Agreement").

*Id*. at ¶ 9; *see also* Exhibit 1 (Doc. 70-1). Despite the execution of an "Agreement on Supply of UTVs following Supply Agreement Termination" by Mr. Vashee on July 29, 2008, Mr. Vashee "wrote the CEO of Bush Hog ['on August 27, 2008'] declaring ANZ International's non-acceptance of the cancellation of the Utility Vehicle agreement." Second Amended Complaint (Doc. 29), incorporated by reference into the Third Amended Complaint (Doc. 82), at ¶ 39; Bush Hog Counterclaim (Doc. 70) at Exhibit 1 (Doc. 70-1). According to Bush Hog, at the time of the July 29, 2008 meeting "the parties had a number of genuine, outstanding disputes relating to, among other things, the payment of invoices by Bush Hog, the cost of missing parts and other rework performed by Bush Hog to cure nonconforming goods shipped by ANZ, and ANZ's failure to repay to Bush Hog amounts that were due as a result of certain contractual prepayments for development costs and inventory" but they attempted to negotiate a resolution of these issue "from the summer of 2008 to early 2009." Bush Hog Counterclaim (Doc. 70) at ¶¶ 10-11. Bush Hog further asserts that "ANZ's position changed dramatically . . .

[and] ANZ filed its complaint in this Court [on April 24, 2009]." *Id.* at ¶ 12. *See also*

Second Amended Complaint (Doc. 29) at ¶ 43 ("By letter of April 6, 2009, ANZ

International's attorney wrote counsel for Bush Hog giving notice of default under the

various agreements."), incorporated into Third Amended Complaint (Doc. 82) at 1.

    II.    <u>Procedural Background: Discovery Abuse Issues</u>.

    On March 1, 2010, Bush Hog filed a motion to compel (doc. 89) seeking an order

to compel ANZ to:

> (1) create a forensic image of the hard drive on which an apparently altered
> document is located and to make that image available to Bush Hog's forensic
> computer expert to determine conclusively whether ANZ has fraudulently altered
> documents;
>
> (2) create and preserve forensic images of all computers and other electronic data
> storage devices that are likely to contain relevant information or, at minimum, to
> create and preserve forensic images of any computers or data storage devices that
> were used by Irfan Sheriff, Rakesh Vashee or Doug Morrow from 2006 to
> present); and
>
> (3) establish a protocol for the preservation and production of electronically stored
> information ("ESI") in this case.

(Doc. 89 at 1-2).  Thereafter, in light of ANZ's response admitting to the alteration of

certain documents (doc. 95), Bush Hog later requested that the Court require ANZ to turn

the actual hard drives of the computers used by Irfan Sheriff and Rakesh Vashee over to

Bush Hog's expert for analysis.  Based on the findings of fact and conclusions of law set

forth in detail in the Court's May 4, 2010 Order, Bush Hog's motion to compel was

granted and ANZ was directed to "produce for forensic analysis and ESI production any

hard drive or other data storage devices used by, and in the possession, custody, or

control of, Irfan Sheriff and Rakesh Vashee" and to do so by June 2, 2010.  (*See* Doc.

113)  The Order states, in pertinent part:

ANZ has admitted that it altered a document. According to the Supplemental Affidavit of Samuel Rubin, it appears that this alteration was done in February 2009 when ANZ necessarily anticipated litigation. Moreover, it remains unclear whether ANZ and Sheriff have been completely forthright with this Court concerning the timing and circumstances of this document alteration. Although ANZ contends that Webster's April 18, 2007 email was altered contemporaneously and solely in an effort to "protect" Doug Morrow [the former Bush Hog then ANZ employee] it appears instead that Mr. Sheriff created the fictitious version of the April 18, 2007 email in February 2009 and did so by backdating his computer clock in an effort to conceal the timing of that alteration. ANZ's conduct casts serious doubt on the authenticity of any document produced by ANZ from the hard drives of any computers or other data storage devices used by and/or in the possession, custody or control of, Mr. Sheriff or Mr. Vashee. In addition, the discrepancies between ANZ's position concerning an appropriate protocol for the preservation of ESI and that of its own expert, Mr. Long, when coupled with ANZ's failure to specifically identify the measures it has actually taken to preserve all relevant ESI, cast further doubt on ANZ's compliance with its obligations to preserve and produce the ESI relevant to this litigation.

(Doc. 113 at 19-20).

On May 27, 2010, ANZ filed a document entitled "Motion for Issuance of Guidance Regarding Order Dated May 4, 2010," (doc. 119); however, the motion actually sought a *modification* of the Court's May 4, 2010 Order. Specifically, ANZ sought leave to produce *only forensic images* of the computer hard drives at issue rather than the hard drives themselves[2] and then only to produce the images *if* permitted by certain vaguely described Indian officials. *See* Doc. 119 at ¶¶ 8 and 10. The matter was set (doc. 143) for hearing on August 20, 2010 and the request was subsequently denied by written order as follows:

---

[2] ANZ initially contended that the production of such forensic images of the computer hard drives was not only unwarranted but improper because it would require ANZ "to take the undue expense of imaging virtually all of its computer and data storage devices." (Doc. 95 at 2).

ANZ makes no effort to address the evidence presented regarding the timing of the admitted alterations to the April 18, 2007 email which resulted in the Order to produce the hard drives.

ANZ now admits to having created in April of 2009 another critical document, the alleged "Refusal Letter" which it admittedly dated August 27, 2008, and yet proffered at all times during this litigation until July 23, 2010, as a document created on August 27, 2008.[3]

ANZ also now admits to having created in March of 2009 yet another critical document, the alleged "July 28-29 Meeting Minutes" which ANZ claims were "disseminated by Irfan Sheriff by email to all attending the meeting from his hotel in Selma on July 29 or July 30, 2008 as he stayed behind after the meeting." [Footnote omitted]. Reply Brief (Doc. 140) at 20. Although ANZ again argues that Mr. Sheriff's assistant merely "retyped the Minutes," ANZ does not actually assert that Mr. Khan simply copied the minutes that were otherwise on file. Consequently, ANZ cannot seriously contend that the subject minutes were merely "re-typed" and not "created" in March of 2009, particularly since Bush Hog has established that certain items in the "Minutes" were neither in Mr. Vashee's notes or located on the referenced whiteboard (doc. 139-25). In addition, as was true with respect to the "Refusal Letter", ANZ proffered these "Minutes" at all times during this litigation until July 23, 2010, as being a document created prior to July 29 or July 30, 2008, and not as a document reconstructed in March of 2009.

(Doc. 154 at 6-7). Consequently, the undersigned concluded that ANZ's conduct

continued to "cast serious doubt on the authenticity of any document produced by ANZ."

*Id.* at 7-8. This doubt regarding authenticity related particularly to the alleged letter from

---

[3] As set forth in the Order of September 9, 2010 (doc. 154):

ANZ contends that this document was "retyped" by Mr. Sheriff's Secretary/Assistant Mr. Yahya Khan because "he was unable to find a soft (computer) copy of the Refusal Letter" and "the original letter was prepared by the Attorneys and was in their office, and he was in a hurry and did not have a scanner at home." Reply Brief (Doc. 140) at 11. ANZ further contends that "Khan re-typed the letter that was on file and had it sent to Rakesh Vashee , [who had departed India for an April 2, 2009 meeting in Toledo, Ohio on 28 or 29 March 2008 [sic]" [and] who attached his signature and converted it to a PDF document [and] [t]his PDF document was then sent to ANZ's Counsel in the USA . . .(whose office was the location for the April 2, 2009 settlement meeting)." *Id.*

(Doc. 154 at n. 4.)

Bush Hog's CEO to Canara Bank dated in one instance as September 5, 2007, and in another instance dated September 5, 2008, which is critical to ANZ's claim that the UTV Supply Agreement was modified to remove Bush Hog's right to terminate the agreement as set forth in Section 13.1.2 until the year 2010. *See e.g.*, Second Amended Complaint (Doc. 29) at ¶¶ 35-36, incorporated by reference into Third Amended Complaint (Doc. 82); Sheriff Affidavit (Doc. 95-1) at ¶¶ 14-15. ANZ was again ordered to produce the hard drives at issue by no later than September 30, 2010, for forensic analysis by Bush Hog's expert. (Doc. 154 at 8).

On October 1, 2010, ANZ filed a document entitled "Plaintiffs' Notice of Compliance" (doc. 155). In this document, ANZ maintains that it has complied with the Court's order because ANZ USA had already turned over "three desktop computers" to its counsel for delivery to defendants' counsel "on or about June 2, 2010" and no longer has "possession, custody or control of these hard drives." (Doc. 155 at 2 *citing* Kanabar Affidavit (Doc. 155-1). ANZ then confirms in this document that ANZ International "has the following media responsive to this Court's Orders: (a) Laptop of Rakesh Vashee; (b) Laptop of Irfan Sheriff; (c) Laptop of Doug Morrow; (d) ANZ's Network Server Computer," but then contends that "[t]his Responsive Media is in the possession, custody, and control of the Indian authorities as recited by Krishnappa in his Affidavit attached as Exhibit Three." *Id*., *citing* Vashee Affidavit (Doc. 155-2) and Krishnappa Affidavit (Doc. 155-3). Once again, with respect to the critical hard drives at issue, ANZ simply seeks to excuse its failure to comply with the Court's order. However, consistent with ANZ's pattern of failing to be completely forthright with the Court, the Krishnappa affidavit contains a number of apparent inconsistencies. For example, Krishnappa

testifies initially that "all the materials/documents are ***under lock and key of the investigating agency*** as part of the investigation process [and that] [t]he Indian Investigating Authorities have . . . instructed ANZ International not to tamper or meddle with the custody of the various documents/materials ***kept under their lock and key*** for the purposes of their investigation."    Krishnappa Affidavit (Doc. 155-3) at ¶ 6 (emphasis added).  Krishnappa continues that "we have been instructed by the Indian Investigating Authorities ***not to part with the Devices***." *Id*. at ¶ 8 (emphasis added).   Notably, neither Krishnappa nor ANZ have submitted to this Court any actual evidence concerning the "various communications" Krishnappa contends were "issued" to ANZ, his client, by the "Indian Investigating Authorities." *Id*. at ¶ 6.   The unsupported assertions of Krishnappa are  insufficient to establish a claimed legal impediment to compliance with this Court's orders, particularly when evidence such as "various communications" which have been "issued" are specifically referenced in the affidavit proffered as the only proof on the issue.  Nor has ANZ demonstrated that any aspect of Marc Galanter's expert testimony concerning Indian law and its application in this case is incorrect.[4] *See* Docs. 123-1 and 162-2 (Affidavits of Marc Galanter).

        In addition to the questions which arise by virtue of these inconsistencies about who is in actual possession of the hard drives at issue in this case, Krishnappa also

---

[4] According to Mr. Galanter, "there is not the slightest suggestion in the record (apart from the unsupported assertion of Mr. Krishnappa) that the police regarded these [hard] drives as relevant or necessary in the private criminal complaint filed by the plaintiff ANZ."  Galanter Affidavit (Doc. 164-2) at ¶ 2.11.  Mr. Galanter further testifies that "[t]he entire absence of any reference to the hard drives anywhere in the documentation of the criminal case is in stark contrast to ANZ's repeated contentions that unnamed 'authorities' have prevented them from producing the drives as ordered by this Court." *Id.* at ¶ 2.14.

testified at one point that "the Devices cannot be replicated **and/or copied.**" *Id.* (emphasis added). This is inconsistent not only with ANZ's May 27, 2010, request for the Court "to modify its Order of May 4, 2010 to permit ANZ to provide forensic images of the various electronic devices referred thereto in that Order" (doc. 119 at ¶10), but also with ANZ's motion "to Request International Assistance Pursuant to the Hague Convention," filed simultaneously with its "compliance" notice on October 1, 2010, in which it contends that such "International Assistance . . . to the impounding authorities will assist, if not provide, **for the forensic scans** required" (doc. 156 at ¶ 4).

ANZ maintains that *arguably* it complied with the Court's prior orders to produce because hard drives from three desktop computers, which were in the possession of ANZ Advanced Technologies, LLC d/b/a ANZ USA, LLC, were "removed from these three computers [and] Mr. Royal Dumas [one of ANZ's former counsel] arranged for a courier to have these three hard drives picked up . . . around June 2, 2010, so that the same could be delivered to Defendants or their agents." Kanabar Affidavit (Doc. 155-1) at ¶ 5. Bush Hog does not dispute this contention; however, for reasons set out herein, ANZ's production of the hard drives of three computers located in the Texas offices of ANZ USA does not offset the abuses perpetrated by ANZ, which are the predicate for dismissal of this action.

As noted initially, this action came on for hearing on November 18, 2010, to allow ANZ, *inter alia*, to show cause why this action should not be dismissed as a sanction for the discovery abuses documented in this Court's orders of both May 4, 2010 (doc. 113) and September 9, 2010 (doc. 154) and for its failure to comply to this day with those

Court orders by producing the Responsive Media at issue. At the hearing ANZ reiterated the argument previously set forth in its motion for request for service abroad:

> Despite the Defendants' repeated claims of discovery abuse the best the Defendants can do is allege that ANZ created meeting minutes and a refusal letter, prior to any lawsuit being filed, that were supposed to have been delivered six months earlier. Neither of these "creations" would have any bearing on the merits of this case except as to consistency of position.

Doc. 156 at ¶ 5. ANZ further argued that "the creation of a refusal letter or the meeting minutes is not 'discovery abuses' as the Defendants pretend." *Id*. at ¶ 6. ANZ essentially argues that Bush Hog is blowing the matter out of proportion for the following reasons:

1.     The alteration of the April 18, 2007 email did not involve an alteration in the substance of the email and, even if ANZ lied to the Court about the timing of the alteration, it should not be the basis of a dismissal of the lawsuit.

2.     Both the admittedly fabricated July 28, 29, 2009 Meeting Minutes and the backdated refusal letter from ANZ to Bush Hog outlines only what ANZ believed to be its claims against Bush Hog.

3.     According to ANZ, the only evidence that remains at issue is the September 5, 2007 Canara Bank Letter which has not been proven to be fabricated and is Bush Hog's own document.

4.     ANZ maintains that the documents relied upon by Bush Hog are only four out of 75, 000 documents produced and thus do not constitute the widespread egregious abuse required before the Court is authorized to dismiss the action.

5.     Finally, for the first time in this litigation, ANZ argues that this action is brought by two separate and distinct corporations, namely ANZ Advanced Technologies,

LLC, d/b/a ANZ USA, LLC, and ANZ International Manufacturing PVT LTD, successor

in interest to ANZ International, and that the wrongdoing of one entity should not be

grounds to dismiss the claims of the other, absent evidence sufficient to pierce the

corporate veil.

    III.    <u>Analysis</u>.

        A.    <u>Standard</u>.

"The Federal Rules of Civil Procedure provide a district court with authority to

impose sanctions, including dismissal, on a party for failing to comply with a court's

discovery order." <u>Shortz v. City of Tuskegee, Ala.</u>, 352 Fed.Appx. 355, 359 (11th Cir.

2009)., *citing* Fed.R.Civ.P. 37(b)(2).[5] Although "[d]ismissal with prejudice is the most

severe Rule 37 sanction," it "may be appropriate when a plaintiff's recalcitrance is due to

willfulness, bad faith or fault." *Id*, *quoting* <u>Phipps v. Blakeney</u>, 8 F.3d 788, 790 (11th Cir.

1993). *See also* <u>National Hockey League v. Metro. Hockey Club, Inc.</u>, 427 U.S. 639,

642 (1976)("The question, of course, is not whether this Court, or whether the Court of

Appeals, would as an original matter have dismissed the action; it is whether the District

Court abused its discretion in so doing. "). Dismissal is not an abuse of discretion

"[w]hen a party demonstrates a flagrant disregard for the court and the discovery

process." 8 F.3d at 790, *quoting* <u>Aztec Steel Co. v. Florida Steel Corp.</u>, 691 F.2d 480, 481

(11th Cir. 1982). A district court may only dismiss an action with prejudice as a last

resort, "when: (1) a party's failure to comply with a court order is a result of willfulness

---

[5] Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure provides, in pertinent part: If a party ... fails to obey an order to provide or permit discovery ... the court where the action is pending may issue further just orders. They may include ... dismissing the action or proceeding in whole or in part." Fed.R.Civ.P. 37(b)(2)(A).

or bad faith; and (2) the district court finds that lesser sanctions would not suffice." *Id.,*
*citing* Malautea v. Suzuki Motor Co., Ltd., 987 F.2d 1536, 1542 (11th Cir. 1993). The
Eleventh Circuit has not only made clear its intent "to protect the ability of district courts
to police discovery simply and speedily" but has emphasized that:

> When the record clearly demonstrates that a plaintiff deliberately and
> defiantly refused to comply with several court orders on discovery and tells
> the court that he will not comply in the future, a district judge has the
> authority to deny that plaintiff further access to the court to pursue the case.
> In those circumstances, we will not go beyond the words of Rule
> 37(b)(2)(C); we will impose no additional burden to discuss lesser
> sanctions on the district judge.

8 F.3d at 790-91. The Eleventh Circuit's position is based upon the Supreme Court's
admonition that:

> There is a natural tendency on the part of reviewing courts, properly
> employing the benefit of hindsight, to be heavily influenced by the severity
> of outright dismissal as a sanction for failure to comply with a discovery
> order. It is quite reasonable to conclude that a party who has been subjected
> to such an order will feel duly chastened, so that even though he succeeds
> in having the order reversed on appeal he will nonetheless comply
> promptly with future discovery orders of the district court.
>
> But here, as in other areas of the law, the most severe in the
> spectrum of sanctions provided by statute or rule must be available to the
> district court in appropriate cases, not merely to penalize those whose
> conduct may be deemed to warrant such a sanction, but to deter those who
> might be tempted to such conduct in the absence of such a deterrent.

National Hockey League, *supra*, 427 U.S. at 643-43. As applied to the case at bar, the
record speaks clearly about the plaintiffs' discovery misconduct and failure to comply
with the Court's Orders of May 4, 2010 (doc. 113) and September 9, 2010 (doc. 154) as

well as the fact that plaintiffs have made it clear that they have no intention of complying in the future.[6]

B.    <u>ANZ USA's involvement in the discovery abuses.</u>

ANZ USA's contention that, despite the documented fabrication of documents by Irfan Sheriff and Rakesh Vashee, the chief officials of both ANZ International and ANZ USA, its claims in this lawsuit should proceed because "the only evidence before this Court of any relationship between ANZ International and ANZ USA is that the latter supplied to Bush Hog the parts manufactured by ANZ International [and] ANZ USA is an American entity with an American corporation [Zain Holding, Inc.] as its sole member." (Doc. 167 at ¶ 7).[7] ANZ further argues that "the Defendants have failed to show how a failure to receive a forensic scan of hard drives that are in the possession of a foreign corporation are necessary or prejudicial to its defense of open invoice claims by ANZ USA." *Id*. at ¶ 8. ANZ fails to acknowledge in any manner that Irfan Sheriff and Rakesh Vashee are not only the perpetrators of the discovery misconduct at issue in this case but are the central figures controlling both ANZ International and ANZ USA. The record in this case includes a number of admissions by ANZ USA and ANZ International and other evidence which establishes ANZ USA's involvement in the discovery abuses at

_____

[6] Plaintiffs have failed to establish that Indian law prevents their compliance with the Court's orders.

[7] This contention is set forth in ANZ USA's Response (doc. 167) to this Court's Order of December 3, 2010 (doc. 165) for additional briefing on the issue of whether "the alleged wrongdoing of ANZ International could not constitute grounds for dismissal of the claims asserted in this action by ANZ Advanced Technologies, LLC, d/b/a ANZ USA."

issue and supports the imposition of sanctions, including dismissal, against ANZ USA, including the following:

- "ANZ USA . . . is affiliated with ANZ International and . . . purchase orders [issued by Bush Hog] were subject to other agreements between Bush Hog and ANZ USA and ANZ International." (Doc. 76 at ¶ 4).[8]

- ANZ USA and ANZ International share common ownership. (Doc. 152-3 at 34).[9]

- ANZ USA and ANZ International, collectively, have identified Rakesh Vashee and Irfan Sheriff as "the highest ranking officers in ANZ" and as "the corporate representatives for most if not all of the possible 30(b)(6) topics [expected to be addressed by Bush Hog in depositions]." (Doc. 83 at 4-6).[10]

- Irfan Sheriff not only admitted that he altered the email from Dennis Weaver to Joe Kolb dated April 18, 2007, by adding himself as a "cc;" recipient but identified himself in that falsified addition as "Irfan Sheriff **ANZ USA**" thus confirming that he did so in his role as an officer of ANZ USA (Doc. 89-1 at 2, emphasis added).[11]

- Irfan Sheriff also admitted that the Refusal Letter which is dated August 27, 2008, and purports to advise Bush Hog that ANZ was rejecting Bush Hog's notice of termination of the UTV Supply Agreement (*see* Doc. 29 – Second Amended Complaint – at ¶ ¶ 39-41) was falsified in that it was created by Irfan Sheriff's Secretary/Assistant Yahya Khan at Irfan Sheriff's request in April of 2009 and that the backdated document was then sent to Rakesh Vashee for his use during his meeting with Bush Hog on April 2, 2009. (Doc. 140 at 11). Rakesh Vashee signed the backdated Refusal Letter and converted it to a PDF document when he received it in 2009. (*Id.*)

- In view of Irfan Sheriff's admission that the Refusal Letter dated August 27, 2008 was in fact created at the direction of Irfan Sheriff and signed by Rakesh Vashee

---

[8] This admission is contained in the joint Answer (doc. 76) of ANZ USA and ANZ International to Defendants' Amended Counterclaim(doc. 70).

[9] This document is the Financial and tax due diligence Report issued by KPMG on November 12, 2008, which is based in part upon "[d]iscussions with the following key management personnel [of ANZ]: Mr. Rakesh Vashee (CEO). . ." (Doc. 152-3 at 1, 4).

[10] This admission is contained in (doc. 83), "Plaintiffs' Response to Defendants' Omnibus Discovery Motion" filed on January 4, 2010 (doc. 80).

[11] The admittedly altered document was the first altered document discovered in this case

in March 2009, ANZ has demonstrated that the assertions made in each of ANZ's complaints at paragraphs 39 through 41 and relied upon by ANZ are false statements made collectively by both ANZ entities to this Court. (Docs. 1 and 29 at ¶¶ 39-41, incorporated by reference into Doc. 82).

- ANZ further admits that certain minutes it produced in this case as having been created contemporaneously of the July 28-29, 2008 meeting between ANZ and Bush Hog were actually created in March 2009. According to ANZ, Irfan Sheriff spilled a can of coke on his laptop in March 2009 and "[w]hen Rakesh Vashee was traveling to the US for the settlement meeting . . . Irfan Sheriff turned to his assistant . . . Yahya Khan who re-typed the Minutes from Rakesh Vashee's notes and options presented on the whiteboard." (Doc. 140 at 21).

In addition to this evidence, Bush Hog has submitted the following evidence to

substantiate the involvement of ANZ USA in the discovery abuses issue in this case:

- ANZ International and ANZ USA operate in a manner (i.e. ANZ USA distributes ANZ International's products in the United States) that appears to facilitate ANZ International's access to tax benefits under Indian law. *See e.g.* Doc. 168-1 at 2- Irfan Sheriff's email dated July 24, 2008, which identifies the subject as "Payment to ANZUSA").

- ANZ USA's initial manager is identified in filings with the Texas Secretary of State as "Irfan Khalid Sheriff." (Doc. 168-2 at 2).

- Irfan Sheriff has been identified as the President of ANZ USA in ANZ USA"s annual Texas Public Information Reports ("PIR") filed in 2002 (doc. 168-3 at 2), 2003 (doc. 168-4 at 2), and 2004 (doc. 168-5 at 2). In its 2006 PIR, ANZ USA identified Sheriff as its 100% owner (doc. 168-6 at 2), a status confirmed by a 2006 organizational chart (doc. 168-7 at 2), and Zain Holdings, Inc. as its Agent (doc. 168-6 at 2).

- In its 2007 PIR, ANZ USA first identified Zain Holdings, Inc. as its 100% owner (doc. 168-8 at 2), an identification repeated in 2008 (doc. 168-9 at 2) and 2009 (doc. 168-10 at 2). Zain Holdings, Inc. was incorporated in 2001 by Irfan Sheriff and its board of directors included not only Sheriff but Rakesh Vashee (Doc. 168-11 at 2).

- In its 2004 PIR, Zain Holdings, Inc. identified its president as Irfan Sheriff. (Doc. 168-12 at 2).[12]

<hr />

[12] According to Bush Hog, this document also identifies Nazneen Sheriff, Irfan Sheriff's wife, as a director of Zain Holdings, Inc. Bush Hog Brief (Doc. 168) at 5, citing Exhibit 12 (Continued)

- Public records from Texas identify Irfan Sheriff as the owner of 27239 Highway Boulevard, Katy, Texas, which is the property where both ANZ USA and Zain Holdings, Inc. are located. (Doc. 168-13).

- According to Bush Hog, ANZ International and ANZ USA have jointly litigated this action and jointly produced documents in response to Bush Hog's discovery requests which were Bates-stamped with the single prefix "ANZ" and produced under a cover letter identifying the production simply as "ANZ documents" without differentiating any document as coming from either ANZ entity. *See e.g.* Doc. 123-7 (11/18/00 Speagle letter stating "Please find enclosed a CD of ANZ documents 000001-002117."); and Doc. 89-1 (the April 18, 2007 email admittedly altered by Sheriff which is Bates-stamped "ANZ 000001.").

Irfan Sheriff and Rakesh Vashee are clearly at the center of <u>both</u> ANZ entities and are the individual perpetrators of the very discovery misconduct that warrants dismissal of this action with prejudice. Additionally, both Irfan Sheriff and Rakesh Vashee are personally subject to ANZ USA's control for purposes of Fed.R.Civ.P. 34. *See e.g.* <u>McKesson Corp. v. Islamic Republic of Iran</u>, 185 F.R.D. 70, 78 (D.D.C. 1999) (explaining that "the control required for Rule 34 purposes may be established by virtue of a principal agent relationship"). ANZ USA owes this Court an independent duty to produce the hard drives in question as required by Fed.R.Civ.P. 34 without regard to the media's physical location. *See e.g.* <u>Coastal Mart, Inc. v. Johnson Auto Repair, Inc.</u>, 196 F.R.D. 30, 33 (E.D. Pa. 2000)(holding that because a corporate party "acts through its agents, [an officer's] refusal to cooperate [with discovery] can be imputed to" a corporate party).

_____

(Doc. 168-12) as well as Doc. 139-5 which merely establishes that Nazneen Sheriff is Irfan Sheriff's wife. However, other than Irfan Sheriff's listing on the 2004 PIR for Zain Holdings, Inc. as President, the documents list the Vice President as merely "Sheriff" without a first name. Bush Hog also suggests that Zain Holdings, Inc. was named after Irfan Sheriff's son, who is named "Zain." *See* Doc. 140-3 at 11.

Sheriff and Vashee are principals of ANZ USA, they direct ANZ USA's activity, and their misconduct is imputable to ANZ USA.

In addition, a corporate party may be required to produce documents within the possession, custody, or control of a sister corporation or other corporate affiliate. For purposes of Fed. R. Civ. P. 34, "control" can exist even if the documents are physically located with a corporate party's affiliate. Of particular application to the case at bar, "control" over a corporate affiliate's documents is not equivalent to "piercing the corporate veil." Uniden America Corp. v. Ericsson Inc., 181 F.R.D. 302, 306 (M.D.N.C. 1998) ("The definition of control under Rule 34 includes situations well beyond those which would permit a finding of . . . liability based on an alter ego situation."). Rather, "control" has been "construed broadly by the courts" to include not just a legal right, but also a "practical ability to obtain the materials" on demand. Steele Software Sys. Corp. v. DataQuick Information Sys., Inc., 237 F.R.D. 561, 564 (D. Md. 2006). The "specific form of the corporate relative does not matter," rather, practical considerations such as "common relationships" and shared ownership or management dictate whether a party can be held responsible for the production of its affiliate's materials. Id. at 564-65.

Throughout the eight months that the discovery misconduct has been litigated in this case, not once, in any of the numerous lengthy briefs and hundreds of pages of "evidentiary submissions" filed jointly by the ANZ entities, have the plaintiffs ever contended that ANZ USA should be treated separately for purposes of discovery and compliance with the Court's orders. Nor did the plaintiffs argue that different obligations should apply to each ANZ entity or that ANZ USA lacked possession, custody or control of Sheriff's and Vashee's computers. Consequently, this Court has

issued multiple orders directed to <u>both</u> ANZ entities on this topic, including the May 4, 2010 (doc. 113) and September 9, 2010 (doc. 154) Orders requiring both plaintiffs to produce the computer hard drives and ESI associated with Sheriff and Vashee and both ANZ entities clearly have failed to comply with those orders.

Both ANZ entities <u>jointly</u> engaged in the discovery misconduct which precipitated the Court's Orders of May 4th and September 9th, 2010. Although ANZ now argues that the questionable documents in this case were produced only by ANZ International[13], all of the altered and fabricated documents were produced <u>jointly</u> by ANZ USA and ANZ International. *See e.g.*, Doc. 123-7 (Speagle letter dated November 18, 2009, identifying documents as being produced by "ANZ" and making no distinction between ANZ International and ANZ USA); Doc. 89-1 (April 18, 2007 email altered by Sheriff as ANZ USA and Bates stamped simply as ANZ 000001-000002). ANZ USA participated fully in all of the sanctionable conduct and it is far too late for plaintiffs to claim that ANZ USA should be treated separately.[14] One Court has recently rejected a similar attempt to separate co-defendants for liability purposes as follows:

> "[A]s the discovery dispute roiled, it was clear that all defendants spoke with one voice" and Magistrate Judge Orenstein "treated the response ... as a unitary response from all defendants. Effectively, all defendants participated in the disinformation discovery strategy and all defendants

---

[13] In support of this contention ANZ references Bush Hog's request for production dated October 15, 2009, which identifies ANZ International in its title but seeks documents relating to both "ANZ International and ANZ USA." *See* Doc 123-6.

[14] *See e.g.* <u>Emerick v. Fenick Indus., Inc.</u>, 539 F.2d 1379, 1380-81 (5th Cir. 1976)(upholding dismissal of complaint under Rule 37(b) where party raised new excuse five months after order compelling production); <u>Lindsey v. Jackson</u>, 87 F.R.D. 405. 407 (N.D. Miss. 1980)(entering judgment as sanction under Rule 37(b) where defendant offered new excuse five months after warning from Court.).

ultimately failed to comply with the order that should have and did flow directly from that strategy.

Joza v. WW JFK LLC, 2010 WL 3619547, * 3 (E.D. N.Y. Sept. 10, 2010). In Joza, the Court held that "**all** defendants participated in the disinformation discovery strategy and all defendants ultimately failed to comply with the order that should have and did flow directly from that strategy. . . [and] . . . **all** of the defendants are liable for their collective refusal to comply with discovery." *Id.* (emphasis added). Likewise, the ANZ entities spoke in this case with one voice and similarly engaged in a coordinated strategy of deception. Consequently, both entities should be sanctioned.

It was not until the hearing conducted on November 18, 2010, that ANZ USA first proffered the assertion that it had fully complied with the Court's orders but failed to offer any explanation or evidence establishing that ANZ USA was not equally culpable for plaintiffs' collective prior misconduct and the continued failure to produce the critical Sheriff and Vashee computer hard drives. (Doc. 168-15 at 40:9-10). In contrast, as stated above, the evidence of record supports no other possible conclusion but that Sheriff and Vashee are as closely involved in the management of ANZ USA as they are with ANZ International and that the misconduct transcended any distinction between these entities. Sheriff and Vashee represent and direct both companies in tandem and the fabricated documents did not relate solely to ANZ International. In fact, the first alteration Sheriff admitted to having made was to the April 18, 2007 email, a document relied upon by both entities as purported proof of Bush Hog's alleged fraud, and identifying Sheriff as representing "ANZ USA" not ANZ International. (Doc. 89-1 at

2).[15]  In addition, the July 28-29, 2008 meeting between ANZ and Bush Hog has been

described as the "UTV Termination Meeting"(doc. 140 at 21) but the minutes of that

meeting were admittedly fabricated at the direction of Irfan Sheriff in March 2009 and

sent to Rakesh Vashee for his use in connection with a "settlement  meeting" in April

2009.  Consequently, it is recommended that the sanction of dismissal in this case be

imposed against both ANZ International and ANZ USA.

       C.     Complete dismissal is required.

       For the reasons stated in the Orders entered on May 4, 2010 (doc. 113) and

September 9, 2010 (doc. 154), there remains to date serious doubt concerning the

authenticity of **any** document produced jointly by "ANZ."  *See* Doc. 123-7 (Speagle

letter dated November 18, 2009, identifying  documents as being produced by "ANZ"

and making no distinction between ANZ International and ANZ USA).  Consequently,

plaintiffs' misconduct has irrevocably "corrupted the discovery record, which is of signal

importance in modern civil litigation." REP MCR Realty, L.L.C. v. Lynch, 363 F. Supp.

2d 984, 1011 (N.D. Ill. 2005) (dismissing claims because of document fabrication and

misrepresentations).  Absent an analysis of every one of Sheriff's and Vashee's computer

hard drives by defendants' expert, both Bush Hog and the Court will be severely

handicapped in their ability to detect other alterations and fabrications in the documents

which were jointly produced by the ANZ entities, or which could hereafter be so

produced, and will therefore suffer continuing prejudice.  Garcia v. Berkshire Life Ins.

---

[15] Although Irfan Sheriff has never acknowledged or admitted that the April 18, 2007 email was actually altered in 2009, no evidence has been presented, despite ample opportunity, to refute the evidence proffered by Bush Hog, establishing this fact.  *See* Doc. 113 at 2-3, *citing* Doc. 101-1 at ¶ ¶ 9-13.

Co. of America, 569 F.3d 1174, 1181 (10th Cir. 2009) ("[W]hen a party . . . submits false evidence, it imposes substantial burdens not only on the opposing party, but also on the judicial system itself, as the extent and relevance of the fabrication are investigated.").

Furthermore, the continued prosecution of this case by either ANZ USA or ANZ International would clearly depend on the testimony of Irfan Sheriff and Rakesh Vashee,[16] - - individuals whose prior testimony has been less than forthright. It would indeed be unacceptable to allow either ANZ entity to advance its claims on that basis. Dotson v. Bravo, 202 F.R.D. 559, 570-71 (N.D. Ill. 2001) ("Toleration of perjury is unseemly—it undermines and dishonors the legal system [and] the courts . . .").

Nor can this Court accept plaintiffs' apparent argument that certain of ANZ USA's claims are "untainted" by the plaintiffs' misconduct. The misconduct perpetrated by the plaintiffs and their "highest ranking officers" (doc. 83 at 6), namely Irfan Sheriff and Rakesh Vashee, infects every aspect of plaintiffs' joint litigation conduct to date, including every document and every witness both ANZ entities have said is relevant to this litigation. As other courts have recognized, where a party has engaged in egregious discovery misconduct, that party is not entitled to parse its claims for varying degrees of contamination. See e.g., Derzack v. County of Allegheny, Pa., 173 F.R.D. 400, 405, 415 (W.D. Pa. 1996) (dismissing all claims despite contention that plaintiffs' fabrication

---

[16] ANZ has already informed this Court that "[i]t is likely Mr. Sheriff and Mr. Vashee would be the corporate representative for most if not all of the possible 30(b)(6) topics" proposed by Bush Hog. (Doc. 83 at 4). The imposition of a mere prohibition against the introduction by ANZ of any document whose authenticity cannot be verified by virtue of ANZ's failure to produce all of the computer hard drives at issue would leave ANZ no choice but to rely upon the testimony of Sheriff and Vashee.

related only to "a collateral issue [that] has no relationship to the merits of [the plaintiffs'] suit").  Indeed, to dismiss only the "most tainted" claims is, in effect, no punishment  at all.  As one court opined:

> If dismissal is to perform the deterrent function envisioned in <u>National Hockey League</u>, [427 U.S. at 642] dismissal of the entire case will often be necessary, even when the discovery dispute is focused on a single claim. If the most that can be put at risk by recalcitrant behavior is dismissal of the disputed claim, the recalcitrant party will often have an incentive to test the court. His obstreperousness may result in some compromise on the disputed claim, which works to his benefit. If he is unlucky and suffers a limited dismissal, he only loses what he would have lost anyway-the particular point at issue. Limited dismissal may present him with nothing to lose and something to gain.

 <u>Weisberg v. Webster</u>, 749 F.2d 864, 872 (D.C. Cir. 1984).  *See also* <u>Dotson v. Bravo</u>, 202 F.R.D. 559,  573 (N.D. Ill. 2001)(" In situations of fraudulent and egregious misconduct-misconduct which goes to the heart of the triable issues in the case and which concurrently affects the orderly administration of justice and the dignity of the courts, the defendants need not quantify their harm or prejudice [and] parties engaged in misconduct "can't be permitted to say 'oops, you've caught me,' and thereafter be allowed to continue to play the game.").

Plaintiffs came into this Court with claims built on fabricated documents, have been less than forthright with the Court, and have disobeyed the Court's repeated orders to produce evidence critical to the authentication of documents produced by the plaintiffs to date.  Accordingly, it is the recommendation of the undersigned that this action be dismissed in its entirety.

CONCLUSION

For the reasons stated above and articulated in the undersigned's Orders entered on May 4, 2010 (doc. 113) and September 9, 2010 (doc. 154), it is recommended that the claims asserted in this case by both ANZ International and ANZ USA be **DISMISSED with prejudice** pursuant to Fed.R.Civ.P. 37(b)(2)(A).[17]

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this <u>26th</u> day of January, 2011.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[17] In this case, an order was entered requiring the plaintiffs to show cause why this case should not be dismissed and the matter came on for hearing on November 18, 2010. *See* Doc. 158 and the Minute entry placed in the record on November 18, 2010. Consequently, defendant's motion for the issuance of a rule to show cause why this case should not be dismissed (doc. 122) is moot.

## RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
## AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. **Objection**. Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[18] after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

**DONE** this 26<u>th</u> day of January, 2011.

/s/ Katherine P. Nelson
KATHERINE P. NELSON
UNITED STATES MAGISTRATE JUDGE

---

[18] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" FED.R.CIV.P. 72(b)(2).