IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ANZ ADVANCED TECHNOLOGIES, LLC<br>d/b/a ANZ USA, LLC, et al., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )   CIVIL ACTION NO. 09-00228-KD-N<br>) |
| BUSH HOG, LLC, et al., | )<br>) |
| Defendant. | ) |

REPORT AND RECOMMENDATION

This action came on for hearing on January 11, 2012, on the motion (doc. 182)

filed by the defendants, Bush Hog, LLC and Henry Crown & Company (collectively

"Bush Hog") for sanctions.  The matter was referred to the undersigned Magistrate Judge

on May 4, 2011, pursuant to 28 U.S.C. § 636(b)(1)(B) for entry of a report and

recommendation.  For the reasons stated below, it is recommended that the motion for

sanctions be **granted in part** and **denied in part**.

Bush Hog seeks sanctions against not only the plaintiffs, ANZ International

Manufacturing Private Limited ("ANZ International"), ANZ Advanced Technologies,

LLC d/b/a ANZ USA ("ANZ USA") (collectively, "ANZ") and their  principals, Irfan

Sheriff and Rakesh Vashee, but against plaintiffs' attorneys, Scott Speagle and M. Ali

Zakaria.  Present at this hearing  were Craig Martin, Forrest Latta, Paul Carroll, Gabriel

Fuentes and Jason Green for Bush Hog;  Mitchell Henry and William Webster for Scott

Speagle; and M. Ali Zakaria, representing himself.  Also present at this hearing was Marc Galanter, Bush Hog's expert on Indian law.

Although required to be present pursuant to the Court's Order setting this matter for hearing (doc. 204, as amended by doc. 206), Irfan Sheriff, Rakesh Vashee, and Sri M. P. Srikanth[1] did not appear.  Nor did the plaintiffs, ANZ International Manufacturing Private Limited ("ANZ International") and ANZ Advanced Technologies, LLC d/b/a ANZ USA ("ANZ USA") (collectively, "ANZ"), send any other representative to this hearing.

In addition, this action is before the Court on the second motion (doc. 213) filed by Scott M. Speagle of Webster, Henry, Lyons, White, Bradwell & Black, P.C., to withdraw as counsel of record for Plaintiffs ANZ Advanced Technologies, LLC, d/b/a ANZ USA, LLC, and ANZ International Manufacturing Pvt. Ltd. pursuant to Local Rule 83.5(h) and the Alabama Rules of Professional Conduct Rule 1.16 (b)(5).[2]  Mr. Speagle further requests that the Court "stay future proceedings for a reasonable time to permit Plaintiffs to obtain additional counsel and to permit new counsel."  (Doc. 213 at 1). Bush Hog asserts, in sum, that "Bush Hog neither opposes the Motion in principle, nor does Bush Hog support or join in the Motion." (Doc. 214 at 5).  A similar motion to

---

[1] This individual was identified by M. Ali Zakaria as the expert retained by ANZ "who states in clear terms that any evidence gathered by the police at the direction of an Indian court remains in the custody of said court, and the said court is the only authority that has control over the evidence . . . [and] prohibited ANZ from taking said media out of the country." (Doc. 199 at 6-7; Doc. 199-1).

[2] Mr. Speagle first sought to withdraw on May 4, 2011 (doc. 194), a request which was denied for the reasons stated in the Court's Order dated May 6, 2011 (doc. 198).

withdraw (doc. 215) has also been filed by Mr. M. Ali Zakaria. The undersigned presumes that Bush Hog similarly does not either oppose or join in Mr. Zakaria's motion. Although the undersigned with discuss these motions as they relate to the sanction issues, disposition of these motions will be by separate order.

I.      Background and Procedural History.

This litigation was initiated by ANZ on April 24, 2009 (doc. 1, as amended at docs. 16, 29) alleging various counts of fraud and breach of contract.  The only executed copy of the contract at issue in this litigation, namely the "Agreement dated April 23, 2007,"  contained a clause  permitting either party "to terminate this Agreement (in its entirety or as to any Product model) at any time . . . on 180 days notice to the other party" (doc. 1-7 at ¶ 13.1.2).  ANZ argued that Bush Hog orally agreed "to delete § 13.1.2" (doc. 26 at 7-9; *see also* doc. 39 at 4-6 and 23).  In support of this contention, ANZ proffered as the evidence what was purported by ANZ to be "a commitment letter to Canara Bank" alleged to have been dated September 5, 2007, which essentially guaranteed that Bush Hog "will not cease our contact through 2010" (doc. 1-8) (hereinafter "the Canara Bank letter").  ANZ claims were also predicated on a document dated August 27, 2008, which ANZ referred to as the "Non Acceptance of [Bush Hog's] cancellation of Agreement dated April 23, 2008"[3] (doc. 26 at 9, referring to doc. 1-10) and alleged to have been sent in response to Bush Hog's termination of the contract dated

_____

[3] The Agreement at issue in this litigation was executed on April 23. 2007, not 2008 as identified in this "non-acceptance"  letter dated August 27, 2008.  *Cf.* Docs. 1-7 and 1-10.

July 17, 2008 (doc. 1-9).   Based principally upon this evidence proffered by ANZ, the undersigned recommended on September 29, 2009, that Bush Hog's motion to dismiss Counts Four and Five of the Second Amended Complaint be denied.  (Doc. 56 at 9-10).[4] This recommendation was adopted as the opinion of the Court on October 20, 2009. (Doc. 66).

On January 6, 2010, ANZ filed a Third Amended Complaint (doc. 82).[5] In this document, ANZ incorporated the Second Amended Complaint (doc. 29), except Counts Six and Seven, as well as the exhibits to the original Complaint (docs. 1-5 to 1-12), and then  added five more counts of breach of contract.  ANZ continued to assert that Bush Hog had agreed that the "Agreement would be long-term, i.e., at least five years."  (Doc. 82 at ¶ 106).

The issue regarding the alteration of documents by the plaintiffs, and the questionable authenticity of documents produced by the plaintiffs, first arose in Bush Hog's motion to compel filed on March 1, 2010.  (Doc. 89).   After the matter was fully briefed (docs. 95, 101, 106 and 110), the undersigned found, *inter alia*, that "ANZ's initial production of documents raised questions about the authenticity of an email [which was admittedly altered by Mr. Sheriff] as well as two letters presumably from Dennis

---

[4] The undersigned, for other reasons, recommended that Bush Hog's motion to dismiss be granted as to Counts Six and Seven of ANZ Complaint.  (Doc. 56 at 10-16, 24)

[5] ANZ amended its complaint "to set forth a more definite statement to correct deficiencies identified by the Court as to the claims stated in Counts Six and Seven of Plaintiffs' Second Amended Complaint []."  (Doc. 75).  Leave to file this Third Amended Complaint was granted on January 4, 2010. (Doc. 79).

Webster to Canara Bank, ANZ's Indian banker, but bearing different dates a year apart."

(Doc. 113 at 16).    The undersigned also concluded that:

> ANZ has admitted that it altered a document. According to the Supplemental Affidavit of Samuel Rubin, it appears that this alteration was done in February 2009 when ANZ necessarily anticipated litigation. [Footnote omitted.]  Moreover, it remains unclear whether ANZ and Sheriff have been completely forthright with this Court concerning the timing and circumstances of this document alteration. Although ANZ contends that Webster's April 18, 2007 email was altered contemporaneously and solely in an effort to "protect" Doug Morrow [the former Bush Hog then ANZ employee] it appears instead that Mr. Sheriff created the fictitious version of the April 18, 2007 email in February 2009 and did so by backdating his computer clock in an effort to conceal the timing of that alteration. ANZ's conduct casts serious doubt on the authenticity of any document produced by ANZ from the hard drives of any computers or other data storage devices used by and/or in the possession, custody or control of, Mr. Sheriff or Mr. Vashee. In addition, the discrepancies between ANZ's position concerning an appropriate protocol for the preservation of ESI and that of its own expert, Mr. Long, when coupled with ANZ's failure to specifically identify the measures it has actually taken to preserve all relevant ESI, cast further doubt on ANZ's compliance with its obligations to preserve and produce the ESI relevant to this litigation.

(*Id*. at 19-20).  Consequently, on May 4, 2010, it was ordered that ANZ produce by June 2, 2010, "any hard drive or other data storage devices used by, and in the possession, custody, or control of, Irfan Sheriff and Rakesh Vashee (the "Responsive Media")"  for "forensic analysis and ESI production" under a specific protocol outlined in that order. (*Id*. at 21-25).

On May 27, 2010, ANZ filed what it docketed as a "Motion to Clarify and for Issuance of Guidance Regarding Order Dated May 4, 2010," and therein sought a modification which would allow them to produce a mere forensic image of the Responsive Media.  According to ANZ, a local Indian prosecutor would not permit ANZ

to comply with this Court's Order.  (Doc. 119).[6]  In its Response in opposition  (docs. 123, 124) filed on June 16, 2010,  Bush Hog not only challenged ANZ's contention that they were prevented from complying with this Court's order by Indian officials but proffered evidence that  two other documents critical to ANZ's claims had been manufactured by ANZ's principals,  Rakesh Vashee and Irfan Sheriff, and that the fabrication occurred in 2009 rather than 2008 as purported.  One of these documents is the "Non Acceptance of [Bush Hog's] cancellation of Agreement dated April 23, 2008"[7] (Docs. 1-10 and 123-5).   The other alleged fabrication involved "a false set of 'minutes' of a July 28-29, 2008 meeting between Bush Hog and ANZ and sent [] to several ANZ-affiliated colleagues under the pretense that the minutes were attached to a July 30, 2008 email to the attendees of the July 28-29, 2008 meeting" but which were not in fact created until March 29, 2009.  *See* Doc. 123 at 4; Doc. 123-2 at 7-8 and 46-57.   In addition to the Response in opposition, Bush Hog  simultaneously filed a motion (doc. 122) by which it sought to have the Court issue an order requiring ANZ to show cause why this case should not be dismissed for falsification of documents and discovery abuses.

On June 22, 2010, ANZ's counsel at that time, Robert W. Bradford and Royal C. Dumas of the firm of Hill, Hill, Carter, Franco, Cole & Black, PC, filed a motion to

---

[6] Although ANZ proposed this modification, it remained conditional in that they would make the proposed forensic images only if they received authorization from the unnamed "Indian authorities." (Doc. 119 at ¶¶ 8 and 10).

[7] *See* n. 2, *supra.*

withdraw and "to stay all proceedings for at least thirty (30) days to permit Plaintiffs to obtain additional counsel and to permit new counsel time to become familiar with the issues involved." (Doc. 126).[8]  Although the motion to withdraw was granted, the request for a 30 day stay was denied and ANZ was directed (doc. 130) to reply by no later than July 23, 2010, to Bush Hog's response in opposition to ANZ's motion (doc. 119) for "guidance" regarding its obligations under this Court's Order dated May 4, 2010 (doc. 113).

On July 23, 2010, Scott Michael Speagle appeared on behalf of ANZ and filed a reply (docs. 138 and 139-141), which also contained a response in opposition to Bush Hog's motion for a rule to show cause why this case should not be dismissed (doc. 122). Bush Hog's request (doc. 142) for leave to file a reply to ANZ's opposition to its motion for a rule to show cause was granted and the action was set for a hearing on all the pending issues (doc. 143).  Mr. Speagle filed a second supplemental evidentiary submission on July 29, 2010 (doc. 144) followed by a third submission on August 13, 2010 (doc. 148).  Bush Hog's reply (doc. 149) was also filed on August 13, 2010.

---

[8] At the request of the undersigned (doc. 127), counsel advised (doc. 128) that the ANZ's principals, Irfan Sheriff and Rakesh Vashee, as well as co-counsel, Ali Zakaria, were sent "a letter formally announcing withdrawal and the motion to withdraw" by "email" on June 22, 2010.  Counsel also advised the Court that "[t]he primary role of Mr. Zakaria, who is admitted on a *pro hac vice* basis, has been to monitor this litigation and offer advice." (*Id*.).  Consequently,  any response to the issues pending at this point in the litigation, would require at least 30 days for "Mr. Zakaria or any other attorney to develop an understanding of the factual and legal issues [and for] the transfer of documents."  (*Id.*).  *See also*, Doc. 129 (Mr. Zakaria's response to Doc. 127, stating that his role "has been limited to acting as the advisor to Plaintiffs and explaining the nuances of the US legal system based on the legal services provided by Robert Bradford and Royal Dumas, who have acted as the lead counsels" and that he "will not be taking the role of the lead counsel.").

Following a hearing on August 20, 2010, an Order was entered on September 9, 2010 (doc. 154) denying ANZ's request to modify the Order of May 4, 2010, and again requiring ANZ to produce the Responsive Media by September 30, 2010.  This order was predicated in part, on the following:  (1) ANZ's continued failure to explain the timing of the admitted alterations its principal made to the April 18, 2007 email which resulted in the May 4, 2010 order to produce the hard drives at issue; (2)  the new admissions that the alleged "Refusal Letter" dated August 27, 2008, was actually created in April of 2009, and  (3)  that the "July 28-29 Meeting Minutes," which ANZ initially contended were "disseminated by Irfan Sheriff by email to all attending the meeting from his hotel in Selma on July 29 or July 30, 2008 as he stayed behind after the meeting,"  were actually created in March of 2009.  (Doc. 154 at 6-7).  The undersigned specifically concluded that "ANZ's conduct continues to cast serious doubt on the authenticity of any document produced by ANZ [and,] [a]ccordingly, Bush Hog is clearly entitled to obtain a forensic analysis of any hard drive or other data storage devices used by, and in the possession, custody, or control of, Irfan Sheriff and Rakesh Vashee (the "Responsive Media")."  (*Id*. at 7-8).

On October 1, 2010, ANZ filed a "Notice of Compliance" in which it contended that ANZ USA, LLC had already produced on June 2, 2010, the Responsive Media from three desktop computers to its counsel for delivery to the defendants. (Doc. 155 at 2).  However, it also admitted that ANZ had failed to produce the Responsive Media in the possession of ANZ International, which it simultaneously contended was actually in the "possession, custody, and control of the Indian authorities."  (*Id*.).  ANZ also filed a

motion (doc. 156) seeking to have this Court request international assistance pursuant to the Hague Convention in order to obtain the hard drives at issue from ANZ.  In response to this filing, Bush Hog filed a "Notice of Plaintiff's Non-Compliance with the Court's September 9, 2010 Order."  (Doc. 157).  A hearing was set for November 2, 2010  (doc. 158) "at which the Court will not only hear oral arguments concerning ANZ's motion (doc. 156) but at which ANZ shall show cause why the undersigned should not recommend that be dismissed as a sanction for the discovery abuses documented in this Court's orders of both May 4, 2010 (doc. 113) and September 9, 2010 (doc. 154) and for its failure to comply with those Court orders by producing the Responsive Media at issue." (Doc. 158 at 1-2).  Pursuant to the parties' joint request (doc. 160), the hearing was moved to November 18, 2010 (doc. 161).

Following the hearing on November 18, 2010, the parties were permitted to further brief the limited issue of whether "the alleged wrongdoing of ANZ International could not constitute grounds for dismissal of the claims asserted in this action by ANZ Advanced Technologies, LLC, d/b/a ANZ USA."  (Doc. 165).  The parties responded on December 16, 2010 (Docs. 167 and 168) and again on December 23, 2010 (doc. 171) and December 27, 2010 (doc. 173).

On January 26, 2011, the undersigned recommended that the claims asserted by both ANZ International and ANZ USA be dismissed with prejudice pursuant to Fed.R.Civ.P. 37(b)(2)(A) because, in sum:

> Plaintiffs came into this Court with claims built on fabricated documents, have been less than forthright with the Court, and have disobeyed the

> Court's repeated orders to produce evidence critical to the authentication of
> documents produced by the plaintiffs to date.

(Doc. 176 at 23).  No objection to this recommendation was filed by ANZ and, according
to Mr. Speagle's testimony at the January 11, 2012 hearing, he was specifically instructed
not to object.  Consequently, the recommendation was adopted as the opinion of the
Court on March 3, 2011, and the claims of both ANZ International and ANZ USA were
dismissed with prejudice. (Doc. 178).[9]  The motion for sanctions now before the
undersigned (Doc. 182) was filed on March 28, 2011.  (Doc. 182). Bush Hog specifically
moves the Court to enter an order providing the following:

- Sanctioning ANZ International and ANZ USA with an award to Bush Hog of
  some portion of the reasonable expenses that Bush Hog incurred in connection
  with ANZ's Motion for Guidance and Bush Hog's Show Cause Motion, the
  August 2010 hearing, the November 2010 hearing, ANZ's Notice of Compliance,
  briefing ordered by this Court on the question whether ANZ USA's claims should
  also be dismissed, and this motion.

- Sanctioning Zakaria with joint and several liability for any award assessed against
  ANZ regarding the expenses Bush Hog incurred in connection with ANZ's
  Motion for Guidance and Bush Hog's Show Cause Motion, the August 2010
  hearing, the November 2010 hearing, ANZ's Notice of Compliance, briefing
  ordered by this Court on the question whether ANZ USA's claims should also be
  dismissed, and this motion.

---

[9] Bush Hog's counterclaim remains pending. *See* Docs. 178 and 180.  Bush Hog has now filed a
motion (doc. 179) to "dismiss the Counterclaim without prejudice, with each side to bear its own costs
and fees," except those "directly related to the egregious misconduct that caused this Court to dismiss
ANZ's claims."  (Doc. 179 at ¶¶ 4-5).  Bush Hog specifically requests, however, that "this Court
temporarily stay entry of final judgment to permit Bush Hog to expeditiously pursue a motion for
sanctions."  (*Id*. at ¶ 7).  This request is based upon defendants' concern that "at least one court has held
that a motion for sanctions must be brought before judgment or it is waived."  (*Id*. at ¶ 6, *citing*,
Centagon, Inc. v. Bd. of Directors of 1212 Lake Shore Drive Condominium Assoc., 2002 WL 356483, at
*5 (N.D. Ill. Mar. 5, 2002) ("a Rule 37 motion for sanctions must be brought, if at all, prior to
judgment")).  An order was entered on March 15, 2011 setting a schedule for the filing of a motion for
sanctions and briefing of same. (Doc. 180).

- Sanctioning Speagle with joint and several liability for any award assessed against ANZ regarding the reasonable expenses Bush Hog incurred in connection with the August 2010 hearing, the November 2010 hearing, ANZ's Notice of Compliance, briefing ordered by this Court on the question whether ANZ USA's claims should also be dismissed, and this motion.

- Issuing a Rule to Show Cause why Sheriff and Vashee should not be sanctioned personally for their pervasive litigation misconduct, perjury, and failure to comply with Court orders. Specifically, Bush Hog requests that Sheriff and Vashee be ordered to show cause why they should not be required to pay some portion of the reasonable expenses that Bush Hog incurred in connection with the ESI Motion, the expensive and time-consuming attorney review and forensic examination of the ESI that ANZ actually produced, ANZ's Motion for Guidance and Bush Hog's Show Cause Motion, the August 2010 hearing, the November 2010 hearing, ANZ's Notice of Compliance, briefing ordered by this Court on the question whether ANZ USA's claims should also be dismissed, and this motion.

- Consistent with <u>Denny Mfg. Co. v. Drops & Props, Inc.</u>, 2011 WL 941358, at *10 (S.D. Ala. Mar. 17, 2011) and other federal authorities, in the event this Court enters sanctions against any of the respondents to this motion, granting Bush Hog leave to prove its reasonable expenses incurred as a result of ANZ's pervasive document tampering, repeated violation of court orders, and presentation of legally and factually groundless arguments.

(Doc. 182 at 21-22). Upon consideration of the arguments of counsel at the hearing on January 11, 2012, the submissions of the parties (docs. 182, 185, 189, 191, 193, 197, 199, 200 and 212), and all other pertinent portions of this record, it is recommended that the motion for sanctions be **GRANTED** as against both ANZ International and ANZ USA as well as their principals, Irfan Sheriff and Rakesh Vashee, but **DENIED** as to plaintiffs' attorneys, Scott Speagle and M. Ali Zakaria.

11

II.    Standard of Review.

Bush Hog seeks (doc. 182 at 1) additional sanctions,[10] namely costs and fees,

against ANZ and plaintiffs' current counsel, Mr. Speagle and Mr. Zakaria, under Rule

37(b)(2)(C) of the Federal Rules of Civil Procedure, which provides:

> (C) Payment of Expenses. Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, ***unless the failure was substantially justified or other circumstances make an award of expenses unjust***.

Fed.R.Civ.P. 37(b)(2)(C), emphasis added.  The Eleventh Circuit has held that

"[s]ubstantially justified means that reasonable people could differ as to the

appropriateness of the contested action."  Maddow v. Procter & Gamble Co., Inc., 107

F.3d 846, 853 (11th Cir. 1997), *citing* Pierce v. Underwood, 487 U.S. 552, 565 (1988).

*See also*  Regions Bank v. Beemer & Associates XLVII, L.L.C.,  2011 WL 1575379, 3

(M.D. Fla. April 26, 2011)(same).

The specific costs and fees sought by Bush Hog have not yet been presented

because the Court has at least tacitly agreed, consistent with Denny Mfg. Co. v. Drops &

Props, Inc., 2011 WL 941358, at *10 (S.D. Ala. Mar. 17, 2011), to allow Bush Hog to

wait until the Court determines whether to enter sanctions against any of the respondents

to this motion, at which point Bush Hog will attempt to prove "its reasonable expenses

incurred as a result of ANZ's pervasive document tampering, repeated violation of court

---

[10] As indicated above, ANZ has previously been sanctioned for its fabrication of documents and discovery misconduct by the dismissal of all claims with prejudice pursuant to Fed.R.Civ.P. 37(b)(2)(A). *See*, Docs. 176 and 178.

orders, and presentation of legally and factually groundless arguments." (Doc. 182 at 22). Bush Hog has, however, subsequent to the initial motion for sanctions, limited its focus of the sanctions to "ANZ's repeated failure to comply with Court orders requiring it to produce the hard drives of its principals, Irfan Sheriff and Rakesh Vashee, that would allow Bush Hog discovery of ANZ's document alterations and other misconduct." (Doc. 193 at 1). With respect to Mr. Speagle and Mr. Zakaria, Bush Hog states that it is "narrowing its sanctions request to the reasonable expenses it incurred as a direct result of ANZ's failure to comply with the Court's September 9, 2010 order.. . [including, for example,] the unnecessary cost of the November 19, 2010 hearing that addressed those issues." (*Id*. at 2-3)[11]. Such a position is consistent with the premise that "Rule 37(b)(2) provides for the award of reasonable expenses and attorney's fees 'caused by the failure' to obey a court order to provide or permit discovery." Hyde & Drath v. Baker, 24 F.3d 1162, 1170 (9th Cir. 1994), *quoting* Liew v. Breen, 640 F.2d 1046, 1051 (9th Cir. 1981) (distinguished fees "caused by the failure to obey a court order" from those "traceable to efforts preceding [the] failure to obey the court order.").

A court's decision regarding sanctions is reviewed under an abuse of discretion standard. Collins v. Lake Helen, L.P., 249 Fed. Appx. 116, 122 (11th Cir. 2007). *See also* Mutual Service Ins. Co. v. Frit Industries, Inc., 358 F.3d 1312, 1326 (11th Cir. 2004) (same), *citing* Harris v. Chapman, 97 F.3d 499, 506 (11th Cir. 1996)(reviewing district

---

[11] The hearing identified by Bush Hog as being conducted on November 19, 2010, was actually conducted on November 18, 2010.

court rulings on discovery motions and discovery sanctions under abuse of discretion standard).  In the <u>Harris</u> case, the Eleventh Circuit explained that:

> District Judges are accorded wide discretion in ruling upon discovery motions, and appellate review is accordingly deferential. A judge's decision as to whether a party or lawyer's actions merit imposition of sanctions is heavily dependent on the court's firsthand knowledge, experience, and observation.

<u>Harris</u>, 97 F.3d at 506.  "An appellate court will not reverse [a district court's ruling on discovery sanctions] unless it has a 'definite and firm conviction that the district court committed a clear error of judgment'." <u>Mutual Service</u>, 358 F.3d at 1326, *quoting* <u>Marchand v. Mercy Med. Ctr.</u>, 22 F.3d 933, 936 (9th Cir. 1994).

Bush Hog also seeks (doc. 182 at 1) the imposition of sanctions against ANZ's principals, Irfan Sheriff and Rakesh Vashee, "under the Court's inherent authority."  The use of such inherent power by the district court to impose sanctions is also reviewed under the abuse of discretion standard.  <u>ClearValue, Inc. v. Pearl River Polymers, Inc.</u>, 560 F.3d 1291, 1308 (Fed. Cir. 2009), *citing* <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 54-55 (1991).  The Supreme Court also made clear that, although a federal court is not forbidden to sanction bad faith conduct by means of the court's inherent power simply because that conduct could also be sanctioned under a statute or sanctioning Rules, the court may safely rely on its inherent power "if in the informed discretion of the court, neither the statute nor the rules are up to the task."  <u>Chambers</u>, 501 U.S. at 50.  *See also* <u>Taylor v. Teledyne Technologies, Inc.</u>, 338 F.Supp.2d 1323, 1368 (N.D. Ga. 2004)("The three narrowly defined circumstances under which a court possesses inherent power to impose attorney's fees are: (1) as part of the common fund exception; (2) as a sanction for

the 'willful disobedience of a court order'; and (3) 'when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons'."), *quoting* <u>Pedraza v. United Guaranty Corp.</u>, 313 F.3d 1323, 1335 (11th Cir. 2002), *in turn quoting* <u>Chambers</u>, 501 U.S. at 45-46.

III.    <u>Analysis</u>.

A.      <u>Sanctions against ANZ International and ANZ USA</u>.

ANZ, as well as its principals, Irfan Sheriff and Rakesh Vashee, have been given ample opportunity to  show cause why sanctions should not be imposed against them. *See*, Docs.  158, 176, 180, 185, 204 and 209.  They have not only failed to do so, but have directed their counsel not to respond on their behalf; have now apparently ceased to communicate with their present counsel, and have neither appeared by substitute counsel, nor sought an extension of time within which to appear and show cause.  Although ANZ's principals, Sheriff and Vashee, have refused to speak with Mr. Speagle, either by answering emails or returning his telephone calls, the evidence establishes that they have each been adequately served with copies of each of the Court's orders.[12]

The findings of misconduct by ANZ's principals, Sheriff and Vashee, as set forth in the Court's prior Orders (*see* docs. 113, 154 and 176), and predicated  not only upon ample evidence of record but, in large part, upon the admissions of Sheriff and Vashee,

---

[12] Mr. Speagle testified at the January 11, 2012 hearing that he has both emailed and mailed copies of the orders to each of the addresses the heretofore had resulted in successful service to the plaintiffs and that none of these transmission has been returned as undeliverable.  Mr. Speagle further testified that he has left messages at the telephone numbers that had previously been used to communicate successfully with Sheriff and Vashee and that there has been no indication that the phones have been disconnected.

have not been challenged by the plaintiffs' by their own volition.  *See*, Docs. 113, 154 and 176.   Therefore ANZ's failure to respond to the motion is a concession that it should be granted.  *See* Anderson v. Greene, 2005 WL 1971116, at *2 (S.D. Ala. 2005) (Finding it proper to consider that "plaintiff's failure to respond operates as a concession that the motion should be granted."); Hudson v. Norfolk Southern Ry. Co., 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) ("[w]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned"). Even if ANZ's failure to respond is not deemed a concession, ANZ should be sanctioned for its failure to comply with multiple court orders without substantial justification as determined by the undersigned (docs. 154 at 4; 176 at 9) and because an award of sanctions would not be unjust.   It is the established misconduct by ANZ principals, Sheriff and Vashee, that necessitated the Court's orders of May 4, 2010 (doc. 113) and September 9, 2010 (doc. 154) to produce the Responsive Media.[13]  ANZ's failure to comply with those orders resulted in the dismissal of ANZ's claims.  With respect to the present issue of Rule 37(b)(2)(C) sanctions, however, the Court must determine what costs and fees resulted from ANZ's actual failure to comply with each of the two orders at issue.

ANZ's failure to produce the Responsive Media by June 2, 2010 as required by the Order of May 4, 2010 (doc. 113), was purported to be because such production was prohibited by Indian law and the Public Prosecutor in India (doc. 119).   Consequently,

---

[13] In view of their admitted fabrication of other documents, the production of the hard drives used by Sheriff and  Vashee is, frankly, the only way to verify that, *inter alia*, the Canara Bank letter, critical to ANZ's claim that Bush Hog agreed "to delete § 13.1.2" of the Agreement and thus had no authority to terminate the Agreement when it did, has not been fabricated by ANZ.

ANZ's failure to comply clearly resulted in Bush Hog's expenditure of funds to employ

an expert in Indian law, Marc Gallanter, to refute the contention that ANZ was

"substantially justified" in failing to comply because of factors beyond its control.  ANZ

was given the opportunity to challenge Mr. Gallanter's testimony but failed to properly

do so.  *See* Doc.  154 at 2-6 (discussing the evidence regarding Indian law, including the

finding that "Mr. Krishnappa's [ANZ's purported expert's] statement in no way

establishes that Indian law prohibits ANZ from complying with this Court's order to

produce the subject hard drives.").  This failure to comply with the Order of May 4, 2010

also necessitated the preparation of Bush Hog's responses (docs. 123-124, 149, 152) to

ANZ's motion to clarify and for issuance of guidance (doc. 119) filed on May 27, 2010,

and subsequent appearance of counsel at the hearing conducted on August 20, 2010.

ANZ's failure to comply with the Order of September 9, 2010 (doc. 154), by

producing the Responsive Media at issue by no later than September 30, 2010, resulted in

Bush Hog's expenditure of funds to refute ANZ's notice of compliance (doc. 155) and

respond to ANZ's motion (doc. 156) for a request that this Court issue a Request for

International Assistance pursuant to the Hague Convention to obtain those hard drives, in

lieu of another Order compelling ANZ to produce them.   This failure to comply also

necessitated the expenses incurred in connection with the November 18, 2010 hearing,

including the procurement of the evidence introduced during that hearing (doc. 164).

To the extent that Bush Hog makes reference to having "incurred considerable

expense, including forensic documents experts, to detect and demonstrate that ANZ was

attempting to defraud Bush Hog and this Court" (doc. 193 at 6),  it must be noted that

such expenses were <u>not</u> the result of ANZ's failure to comply with the Court's orders to produce the Responsive Media but, instead, were expenses incurred to obtain the orders compelling such production.  Consequently, those expenses would not be recoverable sanctions under Rule 37(b)(2)(C).

It is, therefore, recommended that Bush Hog's motion (doc. 182) for sanctions against ANZ for failure to comply with the Orders of May 4, 2010 (doc. 113) and September 9, 2010 (doc. 154) to produce the Responsive Media be granted.  It is further recommended that Bush Hog be required within a date certain to submit defendant's specific claim and proof in support thereof of the expenses incurred as discussed above, unless Bush Hog advises the Court that it no longer wishes to pursue the matter.

B.    Sanctions against Irfan Sheriff and Rakesh Vashee.

Irfan Sheriff and Rakesh Vashee are, by ANZ's own declaration, the two "highest ranking officers in ANZ."  (Doc. 113, *quoting* Doc. 83 at 6).  The controlling relationship of Sheriff and Vashee with both ANZ entities, ANZ International and ANZ USA, as well as their complicity in the manufacture and alteration of documents in this case, is well documented  in the Report and Recommendation entered on January 26, 2011 (doc. 176 at 14-20), and adopted as the Court's opinion on March 3, 2011 (doc. 178).  Sheriff and Vashee have had ample opportunity to show to this Court that their conduct was substantially justified and that they should not be sanctioned.  *See*, Docs.  158, 176, 180, 185, 204 and 209.  They have not only failed to do so, but have directed ANZ's counsel not to respond on their behalf, have now ceased to communicate with their present counsel, and have not sought independent counsel or an extension of time within which

18

to appear and show cause why sanctions should not be imposed upon them.  Although they have refused to speak with Mr. Speagle, either by answering or returning his telephone calls, the evidence establishes that they have been adequately served with copies of each of the Court's orders.

Sheriff and Vashee, by their own volition, have chosen not to challenge their misconduct, which has been thoroughly addressed in the Court's Orders, and predicated not only upon ample evidence of record but, in large part, upon their own admissions. *See*, 113, 154 and 176.   Therefore, Sheriff and Vashee's failure to respond to Bush Hog's motion for sanctions is a concession by them individually that the motion is due to be granted.  *See* Anderson, *supra*, 2005 WL 1971116 at *2; Hudson, 209 F. Supp. 2d  at 1324.   Even if Sheriff and Vashee's failure to respond is not deemed a concession, they should indeed be sanctioned for their duplicity in ANZ's failure to comply with multiple court orders without substantial justification as determined by this Court (docs. 154 at 4; 176 at 9) and because an award of sanctions would not be unjust.   It is the established misconduct by Sheriff and Vashee personally that necessitated the Court's orders of May 4, 2010 (doc. 113) and September 9, 2010 (doc. 154) to produce the Responsive Media. ANZ's failure to comply with those orders, a matter clearly within the control of Sheriff and Vashee, resulted in the dismissal of ANZ's claims.

Because Sheriff and Vashee are not parties in this litigation, the Court's power to impose sanctions is derived from the inherent power "vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  Chambers, *supra*, 501 U.S. at 43, *citing* Link v. Wabash R. Co., 370 U.S. 626, 630–631 (1962).

"Because of their very potency, inherent powers must be exercised with restraint and discretion [and a] primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process."  501 U.S. at 44-45.  The Supreme Court further declared that "[t]here are ample grounds for recognizing ... that in narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel, [citation omitted] even though the so-called 'American Rule' prohibits fee shifting in most cases."   *Id.* at 45.  One of those "defined circumstances" involves the authority of the court to "assess attorney's fees as a sanction for the 'willful disobedience of a court order'. "  *Id.*, *quoting* Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 258 (1975).

Specific authority also exists for this Court to impose sanctions against the individual officers of the corporate party wrongdoer, albeit an issue not yet addressed by the Eleventh Circuit.  *See e.g.* Jones v. Bank of Santa Fe, 40 F.3d 1084, 1089 (10th Cir. 1994) (affirming $7,000 costs sanction against corporate president for perpetuating vexatious bankruptcy litigation); Caldwell v. Unified Capital Corp., 77 F.3d 278, 282 (9th Cir. 1996) (affirming $250,000 costs sanction imposed personally against corporate principal for perpetuating vexatious bankruptcy litigation and holding that the Ninth Circuit allows "sanctions to be imposed against a nonparty . . . under the court's inherent powers"); American Trust v. Sabino, 2000 WL 1478372, at *1 (6th Cir. Sept. 28, 2000)(affirming $4,000 costs sanction imposed personally against trustee because "[a] federal court has the inherent power to impose sanctions against a party or non-party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."); Amerisource

Corp. v. Rx USA Int'l Inc., 2010 WL 2730748, at *5 (E.D. N.Y. July 6, 2010) (imposing

$50,000 fine personally against corporate principal for fabricating evidence and

submitting false testimony, and holding that courts may exercise inherent authority to

sanction a non-party "chief executive, and only person . . . to have a substantive role in

[the] litigation")[14]; Bartos v. Pennsylvania, 2010 WL 1816674, at *4 (M.D. Pa. May 5,

2010) (imposing unspecified costs sanction against non-party employees for false

deposition testimony and holding that "the power of this Court to sanction misconduct by

. . . non-party deponents in civil cases is beyond any serious dispute").

As the court in Bartos reasoned when it imposed sanctions against a non-party,

"[t]o be subject to the Court's inherent power to sanction, a non-party not subject to court

order must (1) have a substantial interest in the outcome of the litigation; and, (2)

substantially participate in the proceedings in which he interfered."  Bartos, 2010 WL

1816674 at *7.  Application of this test "will effectively limit the scope of the Court's

inherent power to sanction to those individuals who were either (1) parties, (2) subject to

a court order, or, (3) real parties in interest." Id, quoting Helmac Products Corp. v. Roth

Plastics Corp., 150 F.R.D. 563, 568 (E.D. Mich. 1993). See also In re Prewitt, 280

F.Supp.2d 548, 562 (N.D. Miss. 2003)("A court may impose sanctions on a nonparty

---

[14] Sanctions were imposed against the non-party corporate officer in Amerisource specifically
because "as the majority shareholder, chief executive, and only person affiliated with RxUSA to have a
substantive role in this litigation, Drucker is RxUSA. He managed the litigation on RxUSA's behalf and
represented RxUSA at every step. RxUSA acted only through him and RxUSA does not dispute that
Drucker's conduct is attributable to RxUSA."  2010 WL 2730748 at *5.  There is little distinction between
the corporate officer in Amerisource and the role Sheriff and Vashee played with respect to ANZ in the
case at bar.

[but] must include the nonparty in a show-cause order to establish personal jurisdiction over him for sanctions").

Thus, having established that the Court has authority pursuant to its inherent powers to impose sanctions against Sheriff and Vashee, and having established that their conduct warrants the imposition of sanctions, there remains only a determination of what sanctions are appropriate in this case. Bush hog seeks sanctions against Sheriff and Vashee of "not only a portion of the attorney's and expert fees that Bush Hog has sought to recover from ANZ and its counsel . . . but also the ESI Motion and the extensive costs Bush Hog incurred in reviewing ESI in order to uncover Sheriff and Vashee's document tampering." (Doc. 182 at 37). Upon careful consideration of this matter, it is the opinion of the undersigned that, although Sheriff and Vashee should be held jointly and severally liable for the sanctions imposed against ANZ as set forth above, no further sanctions should be imposed. While it is true that the Bush Hog incurred "extensive costs" in uncovering the document fabrication by Sheriff and Vashee, this discovery expense resulted not only in the orders compelling ANZ to produce the hard drives of all computers accessed by these corporate officers but, upon ANZ's failure to comply with the Court's orders, in the actual dismissal of all claims asserted by ANZ in this case. It is, therefore, recommended that Bush Hog's motion for sanctions against Sheriff and Vashee be granted only to the extent that they be held liable, jointly and severally, for the sanctions ultimately assessed against ANZ for failure to comply with the Orders of May 4, 2010 (doc. 113) and September 9, 2010 (doc. 154) to produce the Responsive Media, as set forth above.

22

C.      Sanctions against Scott M. Speagle and M. Ali Zakaria.

The only truly contested portion of Bush Hog's motion for sanctions (doc. 182, as clarified in doc. 193) is the portion seeking sanctions against ANZ's counsel.  Bush Hog asserts that its motion for sanctions under Rule 37(b)(2)(C) as against counsel "stems from one issue: ANZ's repeated failure to comply with Court orders requiring it to produce the hard drives of its principals, Irfan Sheriff and Rakesh Vashee, that would allow Bush Hog discovery of ANZ's document alterations and other misconduct."  (Doc. 193 at 1).  Bush Hog " seeks sanctions against ANZ's counsel, Scott Speagle and M. Ali Zakaria (the "Attorney Respondent's"), who advanced and enabled ANZ's failure to comply with Court orders and who, upon learning of fraudulent documents, took no steps to amend ANZ's complaint."  (*Id*. at 1-2).  Bush Hog argues, in sum, that Speagle and Zakaria were not substantially justified in filing ANZ's "Notice of Compliance" (doc. 155) and Motion for International Assistance Pursuant to the Hague Convention (doc. 156) or for certain arguments asserted at the November 18, 2010 hearing.  (*Id*. at 11-18).  Bush Hog limits its request for sanctions to "the reasonable expenses it incurred as a result of ANZ's and the Attorney Respondents' intentional disregard for the Court's September 9 order."  (*Id*. at 20).[15]  Bush Hog contends that "ANZ had no justification for

_____

[15] As discussed in part above, ANZ's failure to comply with the Order of September 9, 2010 (doc. 154) resulted only in Bush Hog's expenditure of funds to refute ANZ's notice of compliance (doc. 155) and respond to ANZ's motion (doc. 156) for a request that this Court issue a Request for International Assistance pursuant to the Hague Convention, as well as the expenses incurred in connection with the hearing  ultimately conducted on November 18, 2010, including the procurement of the evidence introduced during that hearing (doc. 164).  The majority of the fees associated with Bush Hog's expert on Indian law were incurred prior to Speagle's re-appearance in this case and prior to any noncompliance with the September 9th Order to produce.  Consequently, the majority of the fees (Continued)

not complying with the September 9 Order [and,] [a]t that point, the Attorney Respondents had two options: advise the Court clearly and directly that ANZ would not comply (and deal with the consequences) or withdraw from the case." (*Id*. at 12).  Bush Hog had previously complained that "the Attorney Respondents never took any step to amend ANZ's complaint or otherwise withdraw ANZ's reliance on the fabricated documents." (*Id*. at 3).

There is little doubt that Bush Hog has been abused by the misconduct of ANZ, Sheriff and Vashee, inasmuch as ANZ has sought to support its claims with fabricated documents and has failed to comply with the Court's orders to produce the computer hard drives that would either confirm or refute the authenticity of the most critical document relied upon by ANZ in this case, the Canara Bank letter.  However, the most substantial sanction for this abuse has already been imposed - -the dismissal of all claims asserted by ANZ.

To the extent Bush Hog seeks to be reimbursed its expenses and fees associated with ANZ's failure to comply with the September 9th, 2010 (doc. 154) order compelling production of the hard drives at issue, Bush Hog has simply failed to establish that either Speagle or Zakaria had any control over the hard drives or interfered in any manner with their production.  Although they criticize counsel's efforts to substantiate their client's contention that the Indian authorities had prohibited ANZ from complying with this

---

associated with Bush Hog's expert on Indian law were not incurred in connection with any noncompliance with the September 9th Order.

court's orders, there is no authority for Bush Hog's contention than an attorney is obligated to hire an expert that his client has forbidden him from retaining.

Bush Hog also criticizes plaintiffs' more recent attempt to secure assistance under the Hague Convention (doc. 156) on the grounds that the Court had already rejected that argument.[16] The undersigned accepts Mr. Speagle's contention that he thought it an effective way to obtain evidence his client said was being controlled by an Indian prosecutor.[17]

As to the contention that the notice of compliance document was filed as an attempt to mislead the Court, such contention is without merit.  The substance of the document made it clear that the hard drives located in India and in the possession of ANZ International had not and would not be produced.  Although the Court concluded that ANZ had yet to establish that it was prevented under Indian law from producing the hard drives, ANZ's counsel did not cause or contribute personally to ANZ's failure to comply.

In addition, this case was set for a hearing "at which the Court will not only hear oral arguments concerning ANZ's motion (doc. 156) but at which ANZ shall show cause

---

[16] According to Bush Hog, "the Court had chosen not to issue a Request for International Assistance pursuant to the Hague convention, as ANZ had requested in its "guidance" motion (Doc. 119 . . . at 6)."  (Doc. 193 at 12).  The undersigned did not actually address, and frankly did not even consider at that time, any request for international assistance by ANZ when it deliberated about ANZ's motion for guidance together with three motions then pending from Bush Hog.  *See* Doc. 154, the Order of September 9, 2010.

[17] Mr. Speagle testified during the January 11th, 2012 hearing that he was just copying the defendants' efforts in this regard, which had been successful.  Mr. Speagle was referring to the Order entered on July 9, 2010 (doc. 131) granting Bush Hog's motion (doc. 111) for issuance of certain Requests for International Assistance pursuant to the Hague Convention and those specific Requests so issued (docs. 132-136).

why the (doc. 158) undersigned should not recommend that be dismissed as a sanction for the discovery abuses documented in this Court's orders of both May 4, 2010 (doc. 113) and September 9, 2010 (doc. 154) and for its failure to comply with those Court orders by producing the Responsive Media at issue" (doc. 158).  However, Bush Hog's contention that "the Court issued the Show Cause Order only after Bush Hog was put to the expense of filing the Notice of ANZ's Non-Compliance, which clarified that ANZ had not complied" (doc. 193 at 16), is incorrect.

As to the contention that Speagle and Zakaria should have withdrawn from this case prior to the matters filed on October 1, 2010 (doc. 155 and 156), it should be noted that such a withdrawal would have substantially delayed the resolution of the issues because a corporation cannot appear *pro se* in federal court.  *See* Rowland v. California Men's Colony, Unit II Men's, 506 U.S. 194, 217 (1993) ("a corporation, partnership, or association may appear in federal court only through licensed counsel.");  Udoinyion v. The Guardian Security, 440 Fed.Appx. 731, 735 (11th Cir. 2011)("A corporation is an artificial entity that cannot appear pro se and must be represented by counsel.").  Certainly it would have been extremely difficult, if not impossible, to assure that ANZ and its principals, Sheriff and Vashee, had received adequate notice of the Court's show cause orders and requirement that they appear at the January 2012 hearing had Mr. Speagle and Mr. Zakaria withdrawn as counsel of record.  Absent such notice, the Court could not address Bush Hog's motion for sanctions.

For these reasons, it is recommended that Bush Hog's motion for sanctions against ANZ's counsel, Scott Speagle and M. Ali Zakaria, be denied.

26

IV.    <u>Motions to withdraw filed by ANZ's counsel</u>.

Mr. Speagle filed a second motion to withdraw (doc. 213) on January 19, 2012, and Mr. Zakaria filed a similar motion to withdraw (doc. 215) on February 2, 2012.[18] Based on the testimony of both Mr. Speagle and Mr. Zakaria at the January 2012 hearing, the undersigned finds that the motions are well taken.  However, in order to insure that this Report and Recommendation is adequately served on ANZ and its principals, Irfan Sheriff and Rakesh Vashee, it is the intent of the undersigned to enter a separate order directing both Scott Speagle and M. Ali Zakaria to serve a copy of this Report and Recommendation upon ANZ, Sheriff and Vashee, and to advise this Court in writing of the precise actions they employed to perfect such service, at which time the motions to withdraw will be taken under submission.

CONCLUSION

For the reasons stated above, it is recommended that Bush Hog's motion for sanctions be **GRANTED, in part and DENIED, in part.**  It is specifically recommended that the motion be **GRANTED** to the extent that sanctions, which are not inconsistent with this Report and Recommendation and are subsequently proven by Bush Hog within fourteen (14) days of the adoption of this Report and Recommendation by the

---

[18] Mr. Speagle's first motion to dismiss (doc. 194) was filed on May 4, 2011, two days following the filing of Bush Hog's motion for sanctions (docs. 192-193).  This first motion was denied on May 6, 2012, based in part on the finding that, "[i]n view of his limited role throughout this litigation, it is at best questionable that Mr. Zakaria has appeared for ANZ within the meaning of Local Rule 83.5(h)" and on the fact that, "[i]nasmuch as the ANZ corporations are considered artificial entities which cannot appear in federal court pro se, the withdrawal of Mr. Speagle and his firm would leave the plaintiffs essentially unrepresented.  (Doc. 198 at p.3, ¶ 1).

District Court, be imposed against ANZ and its principals, Irfan Sheriff and Rakesh Vashee, jointly and severally.  It is further recommended that the motion for sanctions be **DENIED** to the extent Bush Hog seeks sanctions against Scott Speagle and M. Ali Zakaria.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

Done this 7<u>th</u>  day of February, 2012.

<u>/s/ Katherine P. Nelson</u>
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

Objection.  Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(c); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within [fourteen] days [19] after being served with a copy of the recommendation, unless a different time is established by order."  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party=s arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

Transcript (applicable where proceedings tape recorded).  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this  7th day of February, 2012.

/s/ Katherine P. Nelson
UNITED STATES MAGISTRATE JUDGE

---

[19] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).