IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ANZ ADVANCED TECHNOLOGIES, LLC | ) | |
| d/b/a ANZ USA, LLC, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 09-00228-KD-N |
| | ) | |
| BUSH HOG, LLC, et al., | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

This action is before the Court to determine the amount of sanctions to be imposed against the plaintiffs, jointly and severally, pursuant to the Order entered on March 5, 2012 (doc. 220) adopting the Report and Recommendation entered on February 7, 2012 (doc. 217).   This matter has been referred to the undersigned Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons stated below, it is recommended that a judgment for sanctions in the amount of $335,241.50 be awarded in favor of the defendants, Bush Hog, L.L.C. and Henry Crown & Company (collectively "Bush Hog"), and against plaintiffs, ANZ International Manufacturing Private Limited ("ANZ International"), ANZ Advanced Technologies, LLC d/b/a ANZ USA ("ANZ USA") (collectively, "ANZ"), and plaintiffs' principals, Irfan Sheriff and Rakesh Vashee, jointly and severally.

I.      Background and Procedural History. [1]

The Court permitted Bush Hog to submit proof by March 19, 2012, of their reasonable expenses incurred as a result of ANZ USA's and ANZ International's repeated failure to comply with the Orders of this Court (doc. 220 at p. 2, ¶ 2). [2] The Court then directed ANZ USA and ANZ International and their principals, Irfan Sheriff and Rakesh Vashee to "**SHOW CAUSE**, on or before **Monday, April 2, 2012**, why defendants' claim does not constitute a reasonable amount for the costs and fees incurred as a result of their failure to comply the Court's Orders" (*id*. at p. 2, ¶ 3)(emphasis in original).

A petition in support of the sanction award was filed by Bush Hog on March 19, 2012 (doc. 222).  In sum, Bush Hog contends that "the Court should impose joint and several liability for monetary sanctions against ANZ International Private Limited; ANZ Advanced Technologies, LLC; Irfan Sheriff; and Rakesh Vashee in the amount of $331,120.25."

---

[1] The factual background and procedural history relevant to the decision to impose sanctions in this case has been thoroughly set forth in the Report and Recommendation entered by the undersigned on January 26, 2011 (doc. 176 at 2-12) and adopted by the Court on March 3, 2011 (doc. 178), and in the Report and Recommendation entered on February 7, 2012 (doc. 217 at 3-11,15-23), adopted by the Court on March 5, 2012 (doc. 220). *See also* Doc. 113 at pp. 2-14;  and Doc. 154 at pp. 2-8.

[2] The Court agreed, consistent with Denny Mfg. Co. v. Drops & Props, Inc., 2011 WL 941358, at *10 (S.D. Ala. Mar. 17, 2011), to allow Bush Hog to wait until the Court determined whether to enter sanctions against any of the respondents to Bush Hog's motion for sanctions to  attempt to prove "its reasonable expenses incurred as a result of ANZ's pervasive document tampering, repeated violation of court orders, and presentation of legally and factually groundless arguments." (Doc. 217 at 12-13, *quoting* Doc. 182 at 22).

No response in opposition to the proof submitted by Bush Hog in support of the sanction award sought in this case was filed by  ANZ USA,  ANZ International, or either of their principals, Irfan Sheriff and Rakesh Vashee.  Further, neither ANZ USA,  ANZ International, or either of their principals, Irfan Sheriff and Rakesh Vashee sought an extension of time within which to file any opposition.[3]  Consequently, Bush Hog's petition for sanctions remains unopposed.

II.   <u>Standard of Review</u>.

Any discussion of the legal standard governing requests for attorneys' fees generally includes the principals set forth in <u>Norman v. Housing Authority of City of Montgomery</u>, 836 F.2d 1292 (11th Cir. 1988).  "The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate," which is commonly referred to as the "lodestar" figure.  836 F.2d at 1299; s*ee also* <u>Hensley v. Eckerhart</u>, 461 U.s. 424, 433 (1983)("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate [which] provides an objective basis on which to make an initial estimate of the value of a lawyer's services."); <u>Smith v. Atlanta Postal Credit Union</u>, 350 Fed.Appx. 347, 349 (11th Cir. Sept. 28, 2009) (Reviewed district court's calculation of attorney's fees "using the lodestar method, multiplying defense counsel's reasonable hours by a reasonable hourly rate.").  "There is

---

[3] ANZ USA,  ANZ International, and their principals, Irfan Sheriff and Rakesh Vashee, were on notice (*see* docs. 220 and 221) regarding their obligation to obtain from their attorneys, Scott Speagle and M. Ali Zakaria, a copy of the petition filed by Bush Hog in support of the sanction award (doc. 222) , review same and submit any objections by March 19, 2012.

a "strong presumption that the lodestar figure ... represents a 'reasonable' fee." *Id.*, *quoting* Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986).  *See also* BP Products North America Inc. v. Merritt Oil Co., 2011 WL 4899908, *1 (S.D. Ala. Oct. 14, 2011)("In this Circuit, courts generally apply the "lodestar" method—multiplying the hours reasonably expended by a reasonable hourly rate—to ['assess the reasonableness of' the fees and expenses sought to be recovered].").

    A Court determines the "reasonable hourly rate" by selecting ""the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  Merritt, 2011 WL 4899908 at *2, *quoting* Norman, 836 F.2d at 1299.  *See also* Ceres Environmental Services, Inc. v. Colonel McCrary Trucking, LLC, 2012 WL 1414994, *3 (11th Cir. Apr. 25, 2012)("The general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed."), *quoting*  Am. Civil Liberties Union of Ga. v. Barnes, 168 F.3d 423, 437 (11th Cir. 1999).   "If a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims."  Barnes,  168 F.3d at 437.  *See also* Dempsey v. Palisades Collection, Inc., 2010 WL 923473, * 3 (S.D. Ala. March 11, 2010)( same).

    In the course of the lodestar analysis, the Eleventh Circuit has held that the twelve factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), "have utility in establishing the hourly rate."  Norman, 836 F.2d at 1299; Dempsey, 2010 WL 923473 at 2.   The Johnson factors include: (1) the time and labor

required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* Bush Hog has "the burden to establish their entitlement to an attorney's fee and also to provide documentation of a reasonable hourly rate and hours expended." *Id.*

  III. <u>Analysis</u>.

    A. <u>Hourly Rate</u>.

Bush Hog seeks fees as set forth in the following chart, which specifically identifies each attorney by law firm, years of experience, customary rate, and the hourly rate charged in this case, and includes an hourly rate of $75.00 for the various paralegals who assisted the attorneys:

| Name | Firm | Experience | Customary Hourly Rate[4] | Requested Hourly Rate |
|---|---|---|---|---|
| Craig C. Martin | Jenner & Block | 23 years | $925.00 | $275.00 |
| Forrest S. Latta | Burr & Forman | 29 years | $300.00 | $275.00 |

---

[4] Bush Hog seeks an award of fees based upon rates held by this Court to be reasonable in the Southern District of Alabama. It is, therefore, unnecessary to assess the reasonableness of the rates customarily charged by these attorneys or paid by Bush Hog. In any event, there has been no opposition or challenge to the contention that the rates charged by Jenner & Block attorneys are reasonable in the national market in which they compete. *See* Doc. 222 at n. 2.

| | | | | |
|---|---|---|---|---|
| Gabriel A. Fuentes | Jenner & Block | 18 years | $625.00 | $250.00 |
| Martin F. Burke | Burr & Forman | 16 years | $275.00 | $250.00 |
| Jason J. Green | Jenner & Block | 9 years | $560.00 | $225.00 |
| Anthony B. Borich | Jenner & Block | 2 years | $370.00 | $150.00 |
| Paul B. Rietema | Jenner & Block | 2 years | $370.00 | $150.00 |
| Chad T. Nicholson | Jenner & Block | 6 years | $250.00 | $150.00 |
| Paralegals | varies | varies | varies | $75.00 |

This Court has previously held that the same hourly rates now sought by Bush Hog were reasonable in the Southern District of Alabama.  For example, this Court held that "$275 constituted a reasonable hourly rate for local attorneys with approximately 34 years of experience, $225/hour was a reasonable hourly rate for a local attorney with approximately twelve years of experience, and $200/hour rate was appropriate for counsel with approximately seven years of experience."  Dempsey, 2010 WL 923473 at *3, *citing* Mitchell Co., Inc. v. Campus, Civ. Action No. 08-342-KD-C, 2009 WL 2567889 at *1 & * 17-18 (S.D.Ala. Aug. 18, 2009).  The Court has also held that an hourly rate of $150.00 was appropriate for a second year associate.  Denny Mfg. Co. v. Drops & Props, Inc., 2011 WL 2180358, *5 (S.D. Ala. June 1, 2011).  Paralegal fees of $75.00 per hour has also been held by this Court to be reasonable.  *Id*., *citing* Zuffa, LLC v. Al–Shaikh, 2011 WL 1539878, *9 (S.D. Ala., April 21, 2011) (DuBose, J.)(awarding $75.00 per hour for paralegal fees); ; Wells Fargo Bank, N.A. v. Williamson, 2011 WL 382799, *5 (S.D. Ala., Jan. 3, 2011)(same).

Applying the <u>Johnson</u> factors, the undersigned finds that the hourly rates now sought by Bush Hog in connection with the sanctions at issue are reasonable.  This case clearly involves a novel and difficult combination of issues, including fabrication of documents, complex electronic discovery and forensic investigation, purported conflict between domestic and international civil and criminal law, and proof of a foreign nation's laws.  Further, in view of the conduct of the principals of ANZ, Bush Hog's defense against ANZ's claims required litigators experienced in multiple areas of law, including international law, interrelated criminal and civil actions, and advanced electronic discovery disputes.  The experience, reputation and ability of Bush Hog's attorneys  is well documented.  *See* Doc. 222 at 11.  Such has been demonstrated to the Court throughout the course of this litigation.  Moreover, the results obtained by Bush Hog's professionals included not only the dismissal with prejudice of this $200 million lawsuit against Bush Hog, but sanctions imposed against both ANZ and its principals, Irfan Sheriff and Rakesh Vashee, jointly and severally.  The Supreme Court has held that the results obtained is " 'the most critical factor' in determining the reasonableness of a fee award." <u>Farrar v. Hobby</u>, 506 U.S. 103, 114 (1992), *quoting* <u>Hensley</u>, 461 U.S. at 436. Finally, Jenner & Block has represented Henry Crown and Company, as well as affiliated entities and individuals, for over fifty years. Doc. 222-1 at ¶ 25. In light of Jenner & Block's long-standing experience and satisfactory performance as counsel to the Henry Crown and Company, Jenner & Block's retention was reasonable in this high-stakes dispute, a dispute in which, *inter alia,* ANZ is implicated in the filing of criminal charges

in India against Henry Crown and Company's senior executives and their risk of
international arrest and/or extradition.

The customary hourly rates charged by each of the subject attorneys, particularly
the Jenner & Block attorneys, in most cases substantially exceeds the rates requested in
this fee petition.  Jenner & Block has established that the fees customarily charged by its
attorneys are consistent with rates changed by its competitors.  When applied to Bush
Hog's fee request, the <u>Johnson</u> factors support the reasonableness of the request and
counsel against any downward adjustment.  Accordingly, the undersigned recommends
that the Court apply hourly rates of $75.00 to $275.00 as set forth in Bush Hog's request
and the above chart.

B.    <u>Reasonable Hours Incurred</u>.

Bush Hog seeks compensation for 1,230.95 hours expended by its attorneys and
various paralegals in connection with the activities that this Court has held were
reimbursable in its Report and Recommendation dated February 7, 2012 (doc. 217), and
adopted by the District Judge on March 5, 2012 (doc. 220).[5]   Bush Hog contends that

---

[5] The sanction authorized by this Court are, in sum, the expenses associated with ANZ's failure to
comply with the Orders of May 4, 2010 (doc. 113) and September 9, 2010 (doc. 154) to produce the
Responsive Media [at issue]."  Doc. 217 at 18.  The expenses entailed were described as:

ANZ's failure to comply clearly resulted in Bush Hog's expenditure of funds to employ
an expert in Indian law, Marc Gallanter, to refute the contention that ANZ was "substantially
justified" in failing to comply because of factors beyond its control. ANZ was given the
opportunity to challenge Mr. Gallanter's testimony but failed to properly do so. See Doc. 154 at
2-6 (discussing the evidence regarding Indian law, including the finding that "Mr. Krishnappa's
[ANZ's purported expert's] statement in no way establishes that Indian law prohibits ANZ from
complying with this Court's order to produce the subject hard drives."). This failure to comply
with the Order of May 4, 2010 also necessitated the preparation of Bush Hog's responses (docs.
123-124, 149, 152) to ANZ's motion to clarify and for issuance of guidance (doc. 119) filed on
(Continued)

this Court should award the full amount of hours requested because Bush Hog's attorneys "have demonstrated that adequate voluntary reductions have been integrated into a fee request." Doc. 222 at 12, *citing* <u>Prospect Capital Corp. v. Enmon</u>, 2010 WL 2594633, *4 (S.D. N.Y. June 23, 2010)((awarding full amount of requested hours where "counsel took a conservative approach to the fee application and excluded certain fees"). The Court has determined that Bush Hog is entitled to be reimbursed for the fees and expenses it incurred in connection with: (1) Bush Hog's Response to ANZ's Motion for Guidance and related briefing; (2) the August 2010 hearing conducted by the undersigned; (3) Bush Hog's response to ANZ's Notice of Compliance; and (4) the November 2010 hearing, including the work required by Bush Hog to respond to ANZ's Hague request and Bush Hog's development and presentation of evidence at that hearing. (Doc. 217 at 17-18, adopted by the Court at Doc. 220). These expenses include certain expert witness fees that were the direct result of ANZ's non-compliance with court orders. The

---

May 27, 2010, and subsequent appearance of counsel at the hearing conducted on August 20, 2010.

ANZ's failure to comply with the Order of September 9, 2010 (doc. 154), by producing the Responsive Media at issue by no later than September 30, 2010, resulted in Bush Hog's expenditure of funds to refute ANZ's notice of compliance (doc. 155) and respond to ANZ's motion (doc. 156) for a request that this Court issue a Request for International Assistance pursuant to the Hague Convention to obtain those hard drives, in lieu of another Order compelling ANZ to produce them. This failure to comply also necessitated the expenses incurred in connection with the November 18, 2010 hearing, including the procurement of the evidence introduced during that hearing (doc. 164).

Doc. 217 at 16-17.

following table summarizes the total number of hours, namely 1,101.25 hours, expended by Jenner & Block attorneys and paralegals for which reimbursement is sought:

| Name | Motion for Guidance | 8/20/10 Hearing | Notice of Compliance | 11/18/10 Hearing | Total |
|---|---|---|---|---|---|
| Craig Martin Partner | 12.5 | 33 | 4 | 93.75 | 143.25 |
| Gabriel Fuentes Partner | 41.5 | 42 | 4.5 | 64.5 | 152.50 |
| Jason Green Partner | 79.25 | 46 | 6 | 94 | 225.25 |
| Anthony Borich Associate | 33.6 | 50.25 | 1.75 | 179.5 | 265.10 |
| Paul Rietema Associate | 0 | 0 | 0 | 62 | 62 |
| Chad Nicholson Staff Attorney | 17.75 | 20.5 | 1 | 71 | 110.25 |
| Paralegals | 30 | 33.25 | 58.25 | 75.25 | 196.75 |

*See* Doc. 222-1 at ¶¶ 22-23.  The following table summarizes the total number of hours, namely 129.7 hours, expended by Burr & Forman attorneys and paralegals for which reimbursement is sought:

| Name | Motion for Guidance | 8/20/10 Hearing | Notice of Compliance | 11/18/10 Hearing | Total |
|---|---|---|---|---|---|
| Forrest Latta Partner | 13.9 | 6.7 | .8 | 11.1 | 32.5 |
| Marty Burke Partner | 12.2 | 24.1 | 2.3 | 13.5 | 52.1 |
| Paralegals | 2.0 | 17.7 | .3 | 25.1 | 45.1 |

*See* Doc. 222-2 at ¶¶ 5-6.  Upon consideration of the evidence proffered by both Jenner & Block and Burr & Forman, the undersigned finds that Bush Hog has demonstrated

ample billing judgment in the regular course of its billing practices, in pinpointing what hours should be included in this fee request while excluding other hours, and by eliminating entire categories of time.  The time-intensive legal work undertaken by Bush Hog's professionals was justified and reasonable in this case.  ANZ and its principals, Sheriff and Vashee, injected  into the litigation issues concerning matters of which only ANZ and its principals possessed first-hand knowledge.  ANZ persisted in arguing that Indian law prevented ANZ from complying with this Court's orders without submitting adequate legal support for such an argument and without being forthright with the Court on a number of matters as identified in the Report and Recommendation entered by the undersigned on January 26, 2011 (doc. 176 at 2-12), which was adopted by the Court on March 3, 2011 (doc. 178), and in the Report and Recommendation entered on February 7, 2012 (doc. 217 at 3-11 and 15-23), which was adopted by the Court on March 5, 2012 (doc. 220).

C.   Lodestar Figure Appropriate in this case.

For the reasons stated above, the appropriate lodestar figure applicable in this case may be summarized as follows:

| Name | Approved Hours | Approved Rate | Fee Award |
|---|---|---|---|
| Craig Martin | 143.25 | $275/hour | $39,393.75 |
| Gabriel Fuentes | 152.50 | $250/hour | $38,125.00 |
| Jason Green | 225.25 | $225/hour | $50,681.25 |
| Anthony Borich | 265.10 | $150/hour | $39,765.00 |
| Paul Rietema | 62 | $150/hour | $9,300.00 |
| Chad Nicholson | 110.25 | $150/hour | $16,537.50 |
| Forrest Latta | 32.5 | $275/hour | $8,937.50 |
| Marty Burke | 52.1 | $250/hour | $13,025.00 |
| Paralegals | 241.85 | $75/hour | $18,138.75 |

It is therefore recommended that attorney's fees be awarded to Bush Hog in the total amount of $233,903.75.

      D.    <u>Expert Fees and Expenses</u>.

In addition to the above, Bush hog is also entitled to be reimbursed for the expenses incurred to establish that Indian law did not, in fact, prevent ANZ from complying with this Court's orders, namely the fees charged by Professor Marc Galanter. *See* Doc. 217 at 17; <u>Rosenthal Collins Group, L.L.C. v. Trading Technologies Int'l, Inc.</u>, 2010 WL 2639808,  *3-4 (N.D. Ill. June 29, 2010)((allowing recovery of full amount of requested expert fees pursuant to Rule 37(b)(2)(C) and courts' inherent powers).  The actual hourly rate charged to and paid by Bush Hog for Professor Galanter was $500.00 per hour. (Doc. 222-1 at ¶ 48 and pp. 368-371). Professor Galanter's rate is reasonable based on (a) Professor Galanter's extensive experience (as detailed in Professor Galanter's first affidavit); (b) Professor Galanter's education and training (also detailed in Professor Galatner's first affidavit); (c) the lack of any other comparably respected available experts; (d) the nature, quality, and complexity of the opinions provided; and (e) the fees traditionally charged by Professor Galanter on related matters. *See* <u>Cartrette v. T & J Transport, Inc.</u>,  2011 WL 899523, at *1 (M.D. Fla. Mar. 15, 2011)(discussing the factors to be considered by the court when determining whether an expert's fees are reasonable).

Bush Hog has established that Professor Galanter is an internationally recognized expert on Indian law. (Doc. 123-1 at ¶ 1).  ANZ never disputed the fact that Professer

Galanter was actually hired by the Government of India as an expert witness to testify in a federal district court in the United States in matters relating to the Bhopal toxic gas leak disaster. (*Id*. at ¶ 1.11).  Nor did ANZ ever dispute that Professor Galanter's scholarly work has been cited numerous times by the Supreme Court of India.  (*Id*.).  Professor Galanter's testimony, which this Court found to be the only "competent evidence" regarding the issues of Indian law resulting from excuses proffered by ANZ for its failure to comply with the Court's order (doc. 154 at 4), was critical to Bush Hog's success in obtaining Rule 37(b)(2)(C) sanctions. This Court also found that ANZ essentially conceded that "[Professor] Galanter's knowledge of Indian law has been widely recognized and accepted by judges, lawyers and legal scholars." (Doc. 154 at 5, n.3.)

Professor Galanter proffered three affidavits to the Court (docs. 123-1; 164-2; 211-2) and, as ordered by this Court, traveled to Alabama to give testimony. Each affidavit describes, in meticulous detail, the relevant provisions of Indian law and practices and procedures within the Indian legal system. (Docs. 123-1, 164-2, 211-2.) It is evident that Professor Galanter's testimony was supported by a substantial amount of legal research – some performed directly by Professor Galanter, some performed by his Indian colleague, Rajeev Dhavan – and the final affidavits contained numerous citations to specific Indian statutory provisions and case law. (Docs. 123-1, 164-2, 211-2.)  Although Professor Galanter's hourly rate exceeds the rates of expert witnesses normally charged in the Southern District of Alabama, the Court has not been presented with evidence that any other expert in Indian law is available within the Southern District of Alabama, let alone an expert with the comparable skill, experience, and reputation of Professor Galanter.  In

connection with this case, Professor Galanter expended 156.5 hours at $500 per hour. (Doc. 222-1 at p. 368).  Bush Hog is entitled to recover the fees of $78,250,00 paid to Professor Gallanter.  Bush Hog is also entitled to recover the expenses which were charged by and reimbursed to Professor Galanter in the amount of $23,087.75.  The total award due Bush Hog for the services of its expert, Professor Galanter, is therefore $101,337.75.

CONCLUSION

For the reasons stated above, it is recommended that sanctions be awarded to Bush Hog's in the amount of $335,241.50, representing attorneys' fees in the amount of $233,903.75 plus reimbursement for the fees and expenses paid to Bush Hog's expert, Professor Marc Galanter, in the amount of $101,337.75.  Judgment should be entered in favor of the defendants, defendants, Bush Hog, LLC and Henry Crown & Company, and against the plaintiffs, ANZ International Manufacturing Private Limited  and ANZ Advanced Technologies, LLC d/b/a ANZ USA, and  plaintiffs' principals, Irfan Sheriff and Rakesh Vashee, jointly and severally, in the amount of $335,241.50.

It is further recommended that, inasmuch as the Court has not yet permitted ANZ's counsel, Scott M. Speagle  and Mr. M. Ali Zakaria, to withdraw (docs. 213 and 215)  and neither Speagle nor Zakaria has provided this Court with the Indian address of ANZ[6] that Mr. Speagle and Mr. Zakaria, jointly or severally, be required to

---

[6] The only address provided by counsel when required (doc. 218) to advise this Court of their effort to serve ANZ with a copy of the Report and Recommendation entered on February 7, 2012 (doc. 217) was the address used to FedEx the document to "Anil Kanabar, ANZ Advanced Technologies, LLC, (Continued)

serve a copy of this Report and Recommendation on their clients, ANZ and its principals, Irfan Sheriff and Rakesh Vashee, and advise this Court in writing of the precise method they utilized to effectuate that service.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

Done this  29th  day of June, 2012.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

d/b/a ANZ USA, LLC, 8019 West Grand Parkway South, Suite 1060, P.O. Box 103, Richmond Texas 77407" (doc. 221-1 at 2 and doc. 221-2 at 2).

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

Objection.  Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(c); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within [fourteen] days [7] after being served with a copy of the recommendation, unless a different time is established by order."  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party=s arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

Transcript (applicable where proceedings tape recorded).  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this   29th  day of June, 2012.

/s/ Katherine P. Nelson
UNITED STATES MAGISTRATE JUDGE

---

[7] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).